GINN, APPELLEE, *v.* GINN, APPELLANT.

(No. 973—Decided November 9, 1960.)

*Mr. Elliott E. Meyers*, for appellee.
*Mr. Hudson Jefferys*, for appellant.

COLLIER, J.  This appeal comes to this court on questions of law from a judgment of the Common Pleas Court of Lawrence County in an action instituted in that court by Charles W. Ginn, plaintiff, appellee herein, against Helen A. Ginn, defendant, appellant herein, for a divorce and equitable and legal relief.  The parties will be referred to herein as the paintiff and defendant in the same relation as they appeared in the Common Pleas Court.

Plaintiff, in his amended petition, alleges extreme cruelty and gross neglect of duty as grounds for a divorce. The defendant, in her answer to the amended petition, denies the allegations of the plaintiff and for her cross-petition for divorce and alimony alleges the plaintiff was guilty of extreme cruelty and gross neglect of duty.

On February 26, 1960, the trial court found the issues in favor of the plaintiff, granted the plaintiff a divorce on the ground of extreme cruelty and ordered a division of the property between the parties.  The motion for a new trial was overruled, and from that judgment the defendant has perfected her appeal on questions of law to this court.

The errors complained of are:

(1) That the trial court erred in finding that the conduct of the defendant in making application in the Probate Court to have the plaintiff committed to a hospital for mental treatment was sufficient to establish extreme cruelty as a ground for divorce.

(2) That the trial court erred in finding that the defendant condoned the acts of cruelty by the plaintiff.

(3) That the division of the property decreed by the trial court is against the weight of the evidence.

The pertinent facts may be summarized as follows:

The plaintiff is a man 69 years of age, and the defendant is 60 years of age; they were married April 21, 1930, and three adult children are the issue of the marriage; the plaintiff, from 1930 to 1946, was engaged in operating two taverns in Ironton

known as "Serey's Place" and "Ginn's Gin Mill"; the defendant assisted her husband part time as a waitress, doing errands, etc., in this business; from 1954 to 1956, the plaintiff owned and operated the Howard Distributing Company, selling beer and wine; the total assets of the parties, are by stipulation, $73,669; the plaintiff receives social security, monthly payments of $116, a veteran's pension of $78.75 and $28.75 per month from an insurance policy which will expire in two or three years. The veteran's pension will also terminate if the divorce decree becomes final.

The parties lived together in Ironton until January 1, 1959, when the defendant went to Texas to visit a son. On her return to Ironton, February 2, 1959, she did not go to their home and did not see the plaintiff, but filed an application in the Probate Court of Lawrence County for the admission of the plaintiff to a mental hospital as provided by Section 5123.18, Revised Code, in which she represented that she had reasonable cause to believe plaintiff was mentally ill and in need of treatment. The plaintiff was taken from his home by two deputy sheriffs to the Lawrence County General Hospital, where he was confined in a room for mentally disturbed patients for three days, when he was ordered released. In 1950, the plaintiff voluntarily entered a hospital in Cincinnati for treatment for a nervous condition.

The plaintiff was not examined by a physician before the application for his commitment was filed in the Probate Court but was examined while in the hospital by three physicians, two of whom, Dr. Wm. F. Marting and Dr. Anne Alstott, filed statements in the Probate Court that the plaintiff was not mentally ill and not in need of treatment. The third physician, Dr. Thomas F. Miller, filed a statement in the Probate Court stating that, in his opinion, the plaintiff was mentally ill.

It seems there are no reported cases in Ohio on the question whether an unsuccessful attempt to have a spouse committed to an institution for treatment of a mental disease is sufficient to establish extreme cruelty as a ground for divorce. The general rule is stated in 17 American Jurisprudence, 303, Section 72, as follows:

"If a husband or wife attempts unsuccessfully and in bad faith to have his spouse committed to an institution for treat-

ment of mental disease, such may of itself constitute extreme cruelty. * * * If, however, the attempt to commit a spouse as insane was made in good faith it does not constitute a ground for a divorce.''

The determining factor is whether the attempt to have a spouse committed for treatment was done in good faith and for the benefit of such alleged mentally ill spouse. If the court finds that such an attempt was made in good faith, it does not constitute extreme cruelty. On the other hand, an attempt to have a spouse committed to an institution, in bad faith and without reasonable cause, may of itself constitute extreme cruelty. The term, ''extreme cruelty,'' as used in Section 3105.01, Revised Code, is not limited to acts of physical violence but it is sufficiently broad to encompass acts and conduct which are calculated to destroy the peace of mind and happiness of one of the parties to the marriage and thereby render the marital relationship intolerable. 17 Ohio Jurisprudence (2d), 671, Section 16. In the recent case of *Patzner* v. *Patzner*, 250 Iowa, 155, 93 N. W. (2d), 55, it was held that, where the wife was taken to a sanitarium by her husband and a deputy sheriff and kept there for two weeks, when she was released by the authorities who found she was not mentally ill, the husband's action in having her committed was in itself ample to require the granting of divorce. The court in that case quoted from *Kovar* v. *Kovar*, 237 Iowa, 251, 21 N. W. (2d), 534, as follows:

'' 'It is difficult to conceive of cruelty so merciless, mercenary and unsated.' ''

The subject is annotated in 33 A. L. R. (2d), 1230.

In the instant case, the evidence reveals that the application was filed by the defendant for the commitment of the plaintiff more than 30 days after she had seen him and prior to an examination by a physician; that the plaintiff was living quietly in his home from where he was taken by two deputy sheriffs to the hospital and confined in a room for mentally disturbed patients; and that he was released upon the statements of two physicians who examined him in the hospital and who testified in the trial below that the plaintiff was not mentally ill. The third physician was not called as a witness in the Common Pleas Court. There was no medical proof in the trial of this case that

the plaintiff was mentally ill when he was committed and no proof that the plaintiff was mentally disturbed after he was released from the hospital. The evidence further shows that the plaintiff was hurt, humiliated and suffered grievous mental suffering. Under these circumstances, in our opinion, the trial court was justified in finding that the attempt to have the plaintiff committed to the hospital was done in bad faith and without reasonable cause and that the action of the defendant constituted extreme cruelty.

For her second assignment of error, the defendant contends that the trial court erred in finding that the defendant condoned the acts of cruelty of the plaintiff. The record discloses these alleged acts for the most part to be trivial and that such acts occurred during cohabitation of the parties and, in most instances, many months before the plaintiff and defendant separated. After a careful examination of the record, in our opinion, the trial court was justified in finding that either the alleged acts of the plaintiff were not adequate to establish extreme cruelty or that the defendant condoned such acts.

In the division of the property the trial court directed, ordered and decreed that the plaintiff should have the Pontiac automobile, the tools located in the home and his personal possessions; that the defendant should have the household goods and furnishings and her personal possessions; and that all other personal property, consisting mostly of bonds and deposits in a building and loan association, should be divided equally between the parties. In regard to the house, the court fixed the value thereof at $16,000 and gave the defendant the option of purchasing the plaintiff's undivided one-half interest for the sum of $8,000.

The defendant's principal complaint is that no alimony award was made to her from the social security benefits, the veteran's pension and the annuity from the insurance policy.

Under the present statute, Section 3105.18, Revised Code, the trial court is vested with full equity powers and has broad discretion as to the allowance of alimony in a divorce judgment. Such judgment may be reversed only when the evidence clearly shows an abuse of discretion or a misapprehension of facts. A reviewing court may not substitute its judgment for that of

the trial court and render a judgment which the reviewing court may think is reasonable and proper.

After a careful and full consideration of the entire record, our conclusion is that the trial court considered all the elements and factors included in Section 3105.18, Revised Code, necessary to be considered in determining what allowance of alimony, if any, should be made. If this were a chancery case and before this court for determination *de novo*, it is probable that we would have arrived at a different conclusion. However, under all the circumstances, we do not find an abuse of discretion of the trial court in the exercise of its equity powers or that the judgment is against the manifest weight of the evidence.

We find no error prejudicial to the rights of the appellant, and, therefore, the judgment must be, and hereby is, affirmed.

*Judgment affirmed.*

GILLEN, P. J., and RADCLIFF, J., concur.