**Warrick v. Warrick**
*[Cite as 2 AOA 76]*

Case No. 1246
Darke County, (2nd)
March 2, 1990

R.C. 3105.01
R.C. 3105.18

*Eric H. Brand, 100 Washington Avenue, Greenville, OH, 45331, Attorney for Plaintiff-Appellee.*

*Frank S. Virzi, 218 West Ash Street, Piqua, OH 45336, Attorney for Defendant-Appellant.*

GRADY, J.

In this case Appellant asks us to reverse and vacate findings, decision and orders of the Court of Common Pleas granting a Decree of Divorce to Appellee on grounds of gross neglect of duty and extreme cruelty and making further provisions for division of property, alimony and support. For the reasons stated below we find that Appellant's arguments and objections are not well made and we affirm the trial court.

I.
*Factual Posture*
Appellant Rockney A. Warrick and Appellee Marilyn S. Warrick were married on 24 November 1963. Three children were born as issue of the marriage, two of whom are now emancipated. A third child, Jessica Warrick was born 2 February 1985.

During the course of the marriage both parties worked diligently to provide for their children and each other and to increase their marital state. The husband worked as a farmer while operating a tax service and serving as a township clerk. The wife maintained the home as a homemaker and held a number of clerical and service positions.

On 13 May 1988, Appellee Marilyn S. Warrick filed her complaint for divorce, alleging gross neglect of duty and extreme cruelty. After answer by the Appellant, the matter was assigned for hearing by a Referee.

A hearing was held by the Referee on 13 March 1989. A report and recommendation was made in writing to the court by the Referee and filed on 25 April 1989. The report was extensive and detailed in its findings, particularly concerning property division.

The Referee recommended that Marilyn Warrick be granted a Decree of Divorce and that the parties' agreements as to custody of the minor

child, visitation and division of household goods be adopted by the court. The Referee also recommended division of the remaining properties of the parties, which included farmland, vehicles, livestock, accounts of deposit, and marital debts. As a part of that division, the Referee recommended that property values be transferred from Appellant to Appellee in the form of monthly payments in the amount of $1,850 per month for a period of sixty months, bearing interest at 10% per annum. Thereafter Appellant would begin paying Appellee sustenance alimony at the rate of $500 per month. The Referee also recommended that Appellant pay appellee child support for the minor child, Jessica, in the amount of $50 per week plus poundage.

Appellant Rockney A. Warrick filed six objections to the report of the Referee. The court considered those recommendations, and on 7 June 1989 adopted the report and recommendations, except as to two accounts of deposit which the court allowed to remain with Appellant because each is transferrable only upon the payment of substantial monetary penalties. In all other respects the court affirmed and adopted the report and recommendations of the Referee.

A timely notice of appeal was filed on 6 July 1989. From that appeal, Appellant Rockney A. Warrick presents four assignments of error, which are set out and discussed below.

*First Assignment of Error*
THE COURT ERRED IN FINDING THAT APPELLANT WAS GUILTY OF GROSS NEGLECT OF DUTY AND EXTREME CRUELTY.

The Ohio Supreme Court has held that gross neglect is limited to acts which constitute an omission to perform a legal duty. *Mark* v. *Mark* (1945), 145 Ohio St. 301, 61 NE 2d 595. Therefore, an appropriate analysis for whether gross neglect is present would be (1) was there an affirmative duty to act which the spouse omitted; and, (2) did the omission rise above the ordinary neglect so as to be gross neglect. The trial court has in each case broad discretion to interpret what is gross neglect based on the particular facts and circumstances presented. *Porter* v. *Lerch* (1934), 129 Ohio St. 47.

Extreme cruelty has been defined as acts and conduct calculated to destroy the peace of mind and happiness of one of the parties to the marriage. *Buess* v. *Buess* (1950), 89 Ohio App. 37, 100 NE 2d 646. The conduct must be such that it so seriously affects the household as to render the marital relationship intolerable. *Ginn* v. *Ginn* (1960), 112 Ohio App. 259, 175 NE 2d 848. It is not limited to acts of physical violence. Extreme cruelty encompasses a broad range of aggressive acts which may affect the physical, emotional, or psychological well-being of the victim. As with other grounds, the trial court has broad discretion to determine what facts constitute extreme cruelty. *Verplatse* v. *Verplatse* (1984), 17 Ohio App. 3d 90, 477 Ne 2d 648.

At the hearing, Appellant waived his right to contest the grounds presented by Appellee in support of her allegations of gross neglect of duty and extreme cruelty. (Tr. 7) In her testimony in support of grounds, Appellee testified that the marriage suffered from lack of communication because Appellant was away from the home much of the time. As those absences grew and communication became more difficult, the parties entered into arguments about the problem, and those arguments became more frequent. Eventually, these problems compounded to make it impossible for Appellee to stay in the home any longer, and she left. Thereafter, Appellee made an effort to reconcile the marriage through counselling, but after insufficient participation by Appellant the counselling proved nonproductive. On that basis, Appellee testified that it was impossible to sustain a marital relationship. (Tr. 69-70).

Appellee's testimony was corroborated by that of her brother, Dennis Martin, who testified that the parties did not get along, that Appellee became upset after encounters with Appellant, and those difficulties increased in frequency in recent months before and after the separation of the parties. (Tr. 42-46).

Appellant argues that the evidence produced by Appellee in support of the grounds alleged in her complaint are insufficient to meet the requirements of those grounds, and that the testimony of Dennis Martin was insufficient to corroborate the proof of grounds.

There is no question but that, even in an uncontested divorce, the party alleging grounds for divorce in support of an application for termination of the marriage must prove those grounds by a preponderance of the evidence. However, whether sufficient proof has been advanced is largely a matter for the sound discretion of the trial court, which has before it the parties and witnesses and can observe their demeanor, emotions and attitude. That is particularly important in a case of divorce. The acts of either party which may, on a dry record, appear insignificant or without substance may, nevertheless, in the persons of those testifying before the court demonstrate substantial cause

for a termination of the marriage. A marriage is a relationship in which exchanges between those involved are largely hidden from the view of others. It is an emotional relationship, and one that grows and takes on character over a long period of time. For that reason, even the most serious of defects is often subtle and difficult for the outside viewer to discern. The trial court is in the best position to make that determination, and it would only be upon a showing of abuse of discretion that a Court of Appeals should reverse the determination of a trial court that grounds had been adequately shown.

The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217. In view of the testimony of Appellee and her witness, the duration of the marriage, and the failure of Appellant to offer any evidence controverting those assertions, we cannot find that the trial court acted in abuse of its discretion in finding that Appellant's actions as shown constitute gross neglect of duty or extreme cruelty. In that conclusion we are guided by the view that an uncontroverted showing by one party that the other has failed to provide the kind of companionship and emotional support involved in a marital relationship may very well constitute a gross neglect of the legal duties imposed by that relationship as well as cruelty extreme in degree *albeit* subtle in its manifestation. Appellant's first assignment of error is overruled.

### Second Assignment of Error
### THE TRIAL COURT ERRED IN TAKING INTO ACCOUNT THE POSSIBILITY OF APPELLANT'S INHERITANCE IN AWARDING ALIMONY.

The report and recommendation of the Referee in this matter are quite extensive, specific and detailed. Almost all the findings concern the income and assets of the parties, which are considerable. On the third page of her findings the Referee states:

"The Defendant (Appellant) has one brother and one sister. His parents own at least 418 acres in the area, and testimony indicated that there may be more property belonging to them."

On the fourth page of her report and recommendations the Referee states:

"Her (Appellee's) father is deceased. She has two brothers. Her mother is alive, but is not a wealthy person."

The Referee recommended extensive division of the substantial marital assets of the parties which included several farms, vehicles, livestock, and other similar assets. In addition, the parties were each given various accounts of deposit and other assets.

In order to accomplish the foregoing division the Referee recommended that Appellant be ordered to pay Appellee for the purpose of property settlement the sum of $111,000.00, payable at the rate of $1,850 per month for a period of sixty months. That obligation would continue to pay interest at the rate of 10% until paid in full. At the time it is paid in full, Appellant shall then begin to pay alimony at $500 per month to Appellee. The alimony payments would remain subject to the continuing jurisdiction of the court. The court adopted the recommendation.

Appellant argues that the Referee and the court in adopting the report of the Referee erred in considering the expectations of the parties to inherit because neither of Appellant's parents, the source of his possible enrichment, are deceased. Relying on *Cherry* v. *Cherry* (1961), 66 Ohio St. 2d 348 and *Ziegler* v. *Zeigler* (1957), 166 Ohio St. 406, and *Burdsal* v. *Burdsal* (1925), 3 Ohio Law Abs. 460, Appellant argues that their possibility of an accession of property by inheritance from a living parent may not be considered in determining the ability to pay alimony or considered as an expectation under R.C. 3105.18 (B) (4).

We do agree that the Referee and the court should have avoided references to these familial expectations of the parties. But, mere mention of any matter is not error. There must be a showing that the matter entered into a consideration underlying a determined fact or conclusion, that that error operated to the prejudice of one of the parties.

In this case there is substantial evidence of record to support the recommendations and the orders adopted by the Court requiring property settlement payments and later sustenance alimony. It cannot reasonable be inferred that any or all of those amounts are attributable to the observations and findings of the Referee concerning the parties' familial expectations. Absent that conclusion, we cannot find error of the kind alleged.

Appellant's second assignment of error is overruled.

### Third Assignment of Error
### THE TRIAL COURT ERRED IN FAILING TO PROPERLY CONSIDER ALL OF THE FACTORS ENUMERATED IN R.C. 3105.18 IN DETERMINING THE NECESSITY,

NATURE, AND AMOUNT OF ALIMONY
AWARDED TO APPELLEE.

Appellant's arguments in support of this assignment of error address several separate factors, which are addressed below.

1. *Relative earning abilities of the parties.*

Appellant argues that the Referee and court erred in not using Appellant's taxable income, and in failing to recognize the factor or depreciation on that income or its sources, in determining his earning ability.

The trial court is not obligated to follow the taxable some income analysis in determining the income or resources of either party. The trial court is only obligated to arrive at a conclusion supported by a preponderance of probative evidence. Though taxable income as shown on federal and State returns is probative, the court is not restricted to that evidence and may consider the character of the income and the assets involved in arriving at its determination, as well as other relevant matters.

The report of the Referee, adopted by the court, concluded that Appellant had an average income figure of $63,700.00. Appellant claimed that he had an average income figure, based on his taxable income, of $38,900.00. The court supported this difference with the observation that "unlike a typical a wage earner, a farmer has the ability to manipulate his income to suit almost any purpose".

The Referee and the trial court had before them extensive information concerning the assets of the parties. We cannot find that their observations and conclusions amount to an abuse of discretion under the rule of *Blakemore* v. *Blakemore, supra.* As triers of fact, they are free to arrive at conclusions on the issues as supported by evidence of record. These recommendations and findings conform to that requirement, and we see no error in them.

Appellant also argues that the trial court failed to properly consider what the relative earning abilities of the parties would be after the transfer from Appellant to Appellee for the sum of $111,000.00 in property settlement. While Appellant's income basis will no doubt be diminished by that transfer, there is nothing in the record that would indicated that the court's sustenance alimony order is unreasonable or arbitrary in relation to the income of Appellant, even when diminished by that transfer. The sustenance alimony award is $500 per month, which, in view of the assets and earning abilities of the parties, is not so unreasonable on its face as to conclude that the court abused its discretion.

The monthly payments in the amount of $1,850 are in property settlement, not sustenance alimony, and they are not "excessive" under the rule of *Phillips* v. *Phillips* (1970), 171 Colo. 127, 464 P2d 876, relied upon by Appellant.

2. *The relative assets and liabilities of the parties both before and after the property and alimony awards.*

Appellant fails to advance any argument directly in support of this assertion. We can find no merit in the assertion.

3. *The property brought to the marriage by either party.*

Appellant argues that he entered the marriage in 1963 owning a 70 acre farm, and that through his efforts at maintaining three jobs as well as making investments he generated most if not all of the assets the parties owned at the time of the divorce. He further argues that the approximately even division of those assets ordered by the court is not warranted.

The trial court has broad discretion in dividing the marital estate of the parties. The court's decision need reflect only a *potentially* equal division of those assets. *Cherry v. Cherry, supra.* The law presumes that the assets acquired in the course of marriage were accumulated through the joint efforts and diligence of both husband and wife.

After a review of the record of the division of assets, we cannot find that the trial court has abused its discretion in adopting the recommendations of the Referee.

4. *The standard of living the parties established during the marriage.*

Appellant argues that Appellee will enjoy a standard of living substantially in excess of any standard of living that she enjoyed while married to the Appellant. He bases this largely on his view that she will be receiving $22,000.00 per year in alimony. However, that figure constitute not sustenance alimony but periodic payments for property division that should be counted as income. Absent that transfer, her income will consist of $ 10,000.00 from employment, $2,500 per year in child support, and income from assets in the amount of $160,000.00 given to her. She will also receive $500 per month sustenance alimony commencing in sixty months. During marriage the income of the parties approximated $40,000.00 per year, on the average. In view of these comparisons, we cannot see that Appellee's standard of living post-decree is substantially different enjoyed by the parties during marriage.

On the basis of the foregoing issues as discussed, Appellant's third assignment of error

is overruled.

### Fourth Assignment of Error
### THE TRIAL COURT ERRED IN NOT GIVING APPELLANT CREDIT FOR THE CHILD SUPPORT WHICH HE PAID WHILE THE MINOR SON RESIDED WITH HIM.

Appellant argues that during separation but prior to decree he made ordered payments for support of a minor child even though that minor child was residing with Appellant. He asks a set off or credit for monies paid during that time, approximately $800.00.

The trial court declined to grant Appellant his requested credit. The record shows a mixed state of evidence as to the child's residence and the actions of Appellant and Appellee in providing his needs. We cannot say that the trial court erred in failing to grant Appellant's requested remedy of a credit for monies paid by him under those circumstances.

Appellant's fourth assignment of error is overruled.

### II.
### Conclusion

For the reasons stated in the foregoing opinion, the judgment decision of the trial court is affirmed.

*Judgment affirmed.*

WOLFF, P.J. and WILSON, J. Concur.