JOURNAL ENTRY AND OPINION
Defendant-appellant, Patricia Ann Whigman Rice (Patricia), appeals from a judgment of the Cuyahoga County Court of Common Pleas Domestic Relations Division, which affirmed a Magistrate's decision and order that granted her former spouse Andrew Dwain Rice (Andrew) a divorce on the grounds of gross neglect of duty and extreme cruelty; found that Patricia engaged in financial misconduct; and accepted certain trial stipulations entered by the parties and presented as a joint exhibit without objection at trial. After a review of the law, we affirm the decision of the trial court.
The record before us reflects that Patricia and Andrew married on March 28, 1995 and no children were born of the marriage. At all relevant times, both parties worked at Ford Motor Company and earned comparable salaries. Both parties testified that they agreed to divide household chores and expenses. In June 1995, the parties moved into a newly constructed home. Shortly thereafter, they began experiencing discord over financial issues and the house cleaning.
For a period of time during the marriage, the parties maintained a joint checking account. Patricia terminated the direct deposit of her paychecks into the joint account in the summer of 1997. Andrew closed the joint account in November 1997. The documentary evidence presented establishes payments towards bills and expenses made by Andrew. Patricia testified that she has no records to prove or substantiate any payments or contributions she alleges to have made towards bills, utilities or expenses.
Both parties maintained individual accounts known as Ford Tax Efficient Savings Plan for Hourly Employees (TESPHE). At various times during the marriage, Patricia took loans against her TESPHE account totaling $33,400, itemized as follows: $4,700.00 on January 26, 1996; $9,700.00 on May 5, 1997; $9,800.00 on February 9, 1998; and $9,200 on March 23, 1999. While Patricia testified that she contributed some amount from certain of the loans to Andrew and/or towards marital expenses, her testimony was unsupported by any documentation. Further, Patricia admitted that she never discussed either the 1998 or the 1999 loan with Andrew.
Among other exhibits, the parties offered Joint Exhibits A-P into evidence without objection. Joint Exhibit O contained the trial stipulations, signed by both parties and their respective counsel, which include the following stipulations:
13. Each party responsible for own attorney fees.
14. Each waives their claim for spousal support.
The Magistrate filed her decision and order on April 3, 2000. The Magistrate's findings of fact and conclusions of law include the following:
 Admitted into evidence without objection were Joint Exhibits A through P * * *. Joint Exhibit O is the stipulations of the parties, a copy of which is attached hereto and incorporated herein.
 1. * * * Plaintiff paid many household expenses (see Joint Exhibit K and Plaintiff's Exhibit 13, and see Finding on Support Pendente Lite below). There was little evidence of what Defendant may have paid. As Plaintiff's listing includes few utility payments, their pattern of running the household, with Defendant expected to pay utilities, must have continued. After water service to their home was turned off and service interrupted for several months, Defendant finally paid the outstanding bill during trial and water service resumed.
* * *
 5. Defendant was responsible for general housekeeping and assisted Plaintiff with their award-winning yard. Although Plaintiff knew before their marriage that Defendant was not a tidy housekeeper, the `trash heap house' consisting of clothing in stacks, dirty clothes piling up, lack of in-depth cleaning, and `minimal at best' efforts made by Defendant on helping to keep the house clean finally exceeded even his quiet nature and his ability to tolerate the situation.
* * *
 Because of Defendant's behavior toward Plaintiff including their arguments, her activity in the home including her failures in general orderly housekeeping, and her criticisms and unfriendliness in relation to his family and friends, Plaintiff's peace of mind and happiness in this marriage has been destroyed. Due to Defendant's conduct, the marital relationship was made intolerable for him.
 Although Defendant had evidently agreed to pay utilities, she in some measure failed to do so, resulting in water and telephone service being turned off for failure to pay. Being without water service for a substantial period of time certainly was the failure of a party to perform a marital duty attended by circumstances of indignity or aggravation.
* * *
 Plaintiff has established the grounds of extreme cruelty and gross neglect of duty. By reason thereof, Plaintiff is entitled to a divorce from Defendant.
* * *
 8. In Joint Exhibit O, which contains a partial separation agreement, the parties set forth their agreed division of some assets and described terms of separate property of each party. The terms of said agreement are fair and equitable.
* * *
 11. During the pendency of this matter there were substantial discovery difficulties * * * [Defendant] evidently never answered Plaintiff's interrogatories nor did she comply with his request for production of documents. Even as late as the final day of contested trial, when Defendant was asked for documentary proof of what she had paid in compliance with the order for temporary support, she responded that she `didn't know to bring' anything. When asked for documentary proof of any payments to Plaintiff connected with the purchase and building of the home, she acknowledged she had never produced any bank statements but that she `could get them.'
* * *
 22. Defendant's TESPHE account had a value of $28,513.22 as set forth on Joint Exhibit C. Although she may have had such an account prior to this marriage, no evidence was presented concerning the value in 1995. During the marriage Defendant took the following loans (as shown on Joint Exhibit C):
* * *
 Defendant denied the 1998 loan was really a loan, * * * She used this money to buy a car and to pay her bills. Defendant spent the 1999 loan. She acknowledged that neither of the last two were ever discussed with Plaintiff. Defendant's testimony concerning these loans was entirely unsupported by documentation. She has failed to account at all for the expenditures of funds borrowed as her testimony was neither complete nor accurate and cannot be found to have been credible. However, it cannot be said that the three loans taken prior to the commencement of this action were in any sense a dissipation of marital assets prompted by this litigation. The unilateral use of the funds borrowed in 1999, without any knowledge or participation on the part of Plaintiff and with no known benefit to him or the marriage having been asserted, constitutes financial misconduct * * * Payment of the balance of these loans is, by stipulation, Defendant's obligation.
* * *
 29. * * * It would be incredible to believe that Defendant has expended substantially all of her unaccounted-for net income while this litigation has been pending for household expenditures to benefit the marriage. The only credible conclusion to be drawn is that substantial sums have been spent for Defendant's personal and non-marital purposes. An adjustment in the approximate amount of her unaccounted-for net income for one month, or $3,000, should be made in the property division for this financial misconduct, including her refusal throughout to comply with discovery requests in connection with her income and with any other matters.
* * *
 PURSUANT TO OHIO REVISED CODE 3105.171, the Court finds `during the marriage' here means from the date of marriage to the date of contested trial, a period of about four and one-half (4 1/2) years.
 In accord with O.R.C. 3105.171(F)(8), the terms of the partial separation agreement of the parties (Joint Exhibit O) a copy of which is attached hereto and incorporated herein, which set forth a division of some of the property of the parties, should be ordered into execution, being a fair and equitable division of those assets and liabilities.
 The items set forth therein as marital property to be awarded to each party are found to be of equal value. Pursuant to O.R.C. 3105.171(E)(3).
 Defendant's financial misconduct, in regard both to her 1999 loan against her TESPHE account, otherwise found to be a marital asset, and to the withholding of her net income from the household and marital expenses, should result in a greater award of marital property to Plaintiff.
 The property division as set forth below is equitable.
* * *
 In accord with the stipulation of the parties (Joint Exhibit O), each party has waived any claim for spousal support (Stipulation #14) and each party is responsible for his or her own attorney fees (Stipulation #13).
IT IS THE MAGISTRATE'S DECISION TO ORDER:
 Plaintiff is hereby granted a divorce from Defendant and the marriage contract heretofore existing between the parties is hereby dissolved and set aside.
* * *
 In accord with the stipulation of the parties (Stipulation #15 in Joint Exhibit O), the parties shall equally pay the costs of this proceeding, for which judgment is rendered and execution may issue.
With leave of court, Patricia filed objections to the Magistrate's decision on September 13, 2000. She objected to the Magistrate's findings that the stipulations contained within Joint Exhibit O were fair and equitable and that Patricia had engaged in financial misconduct, gross neglect of duty, and extreme cruelty. She further objected to the Magistrate's decision claiming it was error to award Andrew a greater amount in the division of marital assets; that the marital home was not properly appraised; and that the procedural presentation of the trial was prejudicial to Patricia.
On September 29, 2000, the trial court overruled Patricia's objections and adopted the findings of fact and conclusions of law set forth in the Magistrate's decision. Patricia now appeals the trial court's judgment entry, and asserts three assignments of error for our review. Assignment of Error I states:
 I. THE TRIAL COURT ERRED IN FAILING TO INQUIRE AND ASCERTAIN WHETHER THE PARTIES UNDERSTOOD THE TERMS AND PURPOSE OF THE SEPARATION AGREEMENT.
This assignment of error stems from the various trial stipulations that the parties entered into evidence as Joint Exhibit O. Both parties and their respective attorneys signed Joint Exhibit O. Neither party objected to the introduction of Joint Exhibit O at any point during the trial of this contested divorce. The court accordingly ordered the terms of the stipulation into effect as part of its judgment.
Patricia now urges that the trial court had some obligation to investigate and confirm the parties understanding of the stipulations that they voluntarily entered and jointly submitted into evidence at trial. This assignment of error lacks merit.
A trial court's decision with regard to granting or denying relief from a stipulation will not be interfered with on appeal except where the trial court has been guilty of a manifest abuse of discretion. Horner v. Whitta, 1994 Ohio App. LEXIS 1248 (Mar. 16, 1994), Seneca App. No. 13-93-33, unreported; Pickens v. Pickens, 1993 Ohio App. LEXIS 5587 (Nov. 12, 1993), Meigs App. No. 92 CA 501, unreported (trial court's refusal to allow party to withdraw portion of her stipulations was not an abuse of discretion).
A stipulation, sometimes used synonymously with contract, is a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point to avoid the necessity for proof on an issue. Burdge v. Bd. of Cty. Commrs. (1982), 7 Ohio App.3d 356, 358,455 N.E.2d 1055, 1058. A stipulation of a fact renders proof unnecessary. F. Fareydoon-Nezhad v. Kilgore, 1998 Ohio App. LEXIS 6328 (Dec. 18, 1998), Lawrence App. 98 CA 3, citing, Peters Motors, Inc. v. Rodgers (1954), 161 Ohio St. 480, 120 N.E.2d 80, paragraph two of the syllabus. Where parties choose to stipulate facts in lieu of presenting evidence, they waive any error that may have occurred with respect to the fact that the trial court decided this case without hearing evidence presented by the parties. Id.
Patricia does not claim that her signature, or that of her attorney, upon the stipulations was obtained by fraud or mutual mistake or that the terms are other than clear and unambiguous. Accordingly, Patricia cannot avoid the binding effect of the stipulations on the asserted basis that she did not realize that she had waived spousal support, her claim to attorney fees and expenses, and committed herself to a disposition of some of the property of the parties. As this court noted,
 It is a general rule as to the binding effect of contracts that in the absence of fraud or mutual mistake, a party who executes a written contract cannot say that he was ignorant of its contents and thus escape liability, * * * It is well-established principle that it is the duty of every person who enters into a contract, to learn its contents before he signs it. A party cannot shut his eyes and sign a contract and then ask to be relieved from its plain terms merely because he did not know what it contained. Contracts would have little force and effect if they could be set aside upon such ground.
Kiel v. Circuit Design Technology, Inc. (1988), 55 Ohio App.3d 63, 66,562 N.E.2d 517, 520. This reasoning would apply equally to the written trial stipulations that Patricia and Andrew, and each of their counsel, entered voluntarily in the context of a contested divorce. In addition, Patricia reviewed Joint Exhibit O during her cross-examination and confirmed her willingness to be bound by its provisions. Accordingly, the trial court did not abuse its discretion in adopting and ordering the stipulations of the parties into execution. Assignment of Error I is overruled.
 II. THE TRIAL COURT ERRED IN NOT CONSIDERING ADDITIONAL EVIDENCE DISCOVERED BY APPELLANT AFTER THE TERMINATION OF THE TRIAL.
Patricia next asserts that the trial court failed to consider additional evidence submitted through her affidavit to her objections to the Magistrate's decision. While Patricia maintains that this is evidence discovered after trial, it is actually repetitive of her testimony at trial. Namely, the subject evidence relates to allegations that Andrew was intercepting and secreting her mail sent to the marital residence causing her to be unaware of the fact that certain bills were past due. However, Patricia presented the same evidence through her testimony at the trial.
Patricia further confirmed that she knew the water bill was not current and that she did not see the last bill.
It appears that substantially the same evidence that was presented in Patricia's affidavit was also presented during trial. Additionally, there is no indication that the trial court did not consider this evidence again through Patricia's affidavit. The trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Accordingly, a reviewing court is not free to substitute its judgment for that of the trial court and is guided by a presumption that the findings of a trial court are correct. Id. There being no indication that the trial court did not fully consider this evidence as submitted at trial and in Patricia's affidavit, Assignment of Error II is overruled.
 III. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING DEFENDANT GUILTY OF FINANCIAL MISCONDUCT AND GROSS NEGLECT OF DUTY AND EXTREME CRUELTY.
In her final assigned error, Patricia urges that the trial court abused its discretion in finding that she engaged in financial misconduct, gross neglect of duty, and extreme cruelty. An abuse of discretion is defined as a decision that is unreasonable, arbitrary or unconscionable, rather than a mere error in judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 21.
As set forth above, an appellate court may not substitute its judgment for that of the trial court. This Court has found that
 The term `gross neglect of duty' is not subject to precise definition and its basis as a ground for divorce under R.C. 3105.01 is determined by the circumstances of each case. [citations omitted] The trial court has a large measure of discretion in determining the sufficiency of the evidence in granting a divorce on the ground of gross neglect of duty. Weinstein v. Weinstein (App. 1962), 90 Ohio L. Abs. 199; Buess v. Buess, supra. A reviewing court may only set aside a decree of divorce `* * * only when the record does not disclose any evidence of a substantial nature which reasonably supports the judgment.'
Patterson v. Patterson, 1992 Ohio App. LEXIS 11728 (July 22, 1982), Cuyahoga App. 43707, unreported (party's failure to pay utility bills resulting in loss of electricity supports granting of divorce on grounds of gross neglect of duty); see, also, Williams v. Williams (July 1, 1993), Cuyahoga App. No. 62267, unreported ([g]ross neglect of duty is the failure of one party to perform a marital duty attended by circumstances of indignity or aggravation).
We cannot say that the trial court abused its discretion in granting Andrew a divorce on the grounds of gross neglect of duty.
Likewise, the determination of what facts constitute extreme cruelty rest within the discretion of the trial court.
 Extreme cruelty consists of acts and conduct which destroy the peace of mind and happiness of one of the parties to the marriage and thereby render the marital relationship intolerable. Ginn v. Ginn (1960), 112 Ohio App. 259 [16 O.O.2d 164, 175 N.E.2d 848].
Williams, supra, quoting Hunt v. Hunt (1989), 63 Ohio App.3d 178, 181. The trial court found that Andrew established extreme cruelty by reason of Patricia's activity in the home including her failures in general orderly housekeeping, and her criticisms and unfriendliness in relation to his family and friends. There is sufficient evidence to support the trial court's determination such that it did not abuse its discretion in granting the divorce on the ground of extreme cruelty.
Lastly, an appellate court will not disturb a finding of financial misconduct absent an abuse of discretion. Berish v. Berish (1982),69 Ohio St.2d 318, 319. Financial misconduct involves some element of profit or interference with another's property rights. Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268, unreported. A diminution of the marital estate during the pendency of a divorce action might create an inference of misconduct. Id. The trial court limited its finding of financial misconduct to conduct and financial transactions that Patricia engaged in during the course of the pendency of the divorce. Further, the record is replete with references to Patricia's inability to account for and/or otherwise substantiate her financial activities and expenditures of funds. Accordingly, the trial court did not abuse its discretion in finding financial misconduct. Assignment of Error III is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J., and TERRENCE O'DONNELL, J., CONCUR.