BUESS, APPELLANT, *v*. BUESS, APPELLEE.

38

(No. 388—Decided January 18, 1950.)

*Messrs. Whetherill & Schwemmer,* for appellant.
*Mr. Justin McElroy* and *Mr. Aaron Blackford,* for
appellee.

JACKSON, J. This is an appeal on questions of law.
There are six assignments which embrace the claimed
errors of the trial court: (1) That the judgment is
against the weight of the evidence; (2) that there was
no evidence to support the judgment of divorce; (3)
that if there was any evidence to support the granting
of the divorce, there was no corroboration; (4) that
as a result of the granting of the divorce, the custody
of the son, Donald Buess, was confided to the defend-
ant; (5) that the value of the real estate was fixed by
witnesses not qualified to testify thereto; and (6) that
irrespective of the value all property should have
been awarded to the plaintiff instead of to the defend-
ant.

The grounds upon which the divorce was granted to
defendant consisted of gross neglect of duty and
cruelty.

The evidence discloses that in 1928 the plaintiff and
the defendant started living together without benefit
of clergy. At that time there were six children of the
plaintiff by a former husband. The children ranged
in age from one to twelve years, and were named
Mary, William, Charles, Marie, Harold and Marion
Daniel.

At the instance of the Probate Court of Hancock

County, Ohio, these parties were married in 1940, and by that time a boy and a girl were born as the issue of such relationship.

At the time of the trial in 1949 the youngest of the stepchildren, Marion Daniel, was twenty-four years of age, and the two children born to the parties, Norma Jean Buess and Donald Buess, were 15 and 12 years of age respectively.

Two injunctive orders were issued against the defendant, one of which required him to vacate the home and permit the plaintiff to occupy it alone with the children, and the second of which restrained and enjoined him from selling any property of any kind in which he had an interest.

The defendant supported the entire family, including the stepchildren, until they were able to go to work, after receiving such schooling as they desired. The history of the defendant is that of a hard working, thrifty individual who contributed all his earnings and efforts to the rearing of these children, as well as to the support of the plaintiff.

The history of the stepchildren shows a disposition not only not to observe the discipline of the defendant, but also to disregard the laws of the state and the United States. They were frequently in trouble with the law and several of them spent time in penal institutions. The defendant often furnished the money to relieve them of their indiscretions. During all this time, whether married or single, working or idle, they came back to the defendant's home at frequent intervals, partook of his substance, and at the same time ridiculed and belittled him. Quarrels were frequent, with the plaintiff taking the side of her children, until it became so disagreeable that they would arrange to come home and eat and occupy the house while defendant was at work.

The witnesses of the plaintiff in her action for divorce, as distinguished from the witnesses as to alimony, were invariably sons and daughters and sons-in-law and daughters-in-law of the plaintiff, but not of the defendant.

The plaintiff, by a lack of discipline and the payment of allowances, alienated the two children of the parties from the defendant so that both of them were of the opinion that he was a hard disciplinarian and stingy, with the result that in their testimony they both indicate their desire to live with the plaintiff.

The appellant, in her brief, insists that there was no corroboration of the testimony of the defendant. However, we are of the opinion that the corroboration was full and complete in the examination and cross-examination of the plaintiff and her sons and daughters and sons-in-law and daughters-in-law.

"* * * While the earlier doctrine with respect to the nature and character of the acts required to constitute 'extreme cruelty' was that there must be either personal violence, or the reasonable apprehension thereof, or a systematic course of illtreatment affecting the health and endangering the life of the party against whom it is directed, the tendency of the more recent decisions appears to be to give the term a somewhat broader scope, so as to include acts and conduct the effect of which is to render the marital relation intolerable, although they do not directly affect the health of the party against whom they are directed." 14 Ohio Jurisprudence, 389, Divorce and Separation, Section 12.

"Where, however, the conduct of a spouse is calculated permanently to destroy the peace of mind and happiness of the other so as utterly to destroy the objects of matrimony, a divorce may be granted on the ground of cruelty." 27 Corpus Juris Secundum, 552, Divorce, Section 28.

"In such a case, where the evidence clearly discloses a course of conduct and demeanor on the part of the wife, reflecting an attitude of opposition to her husband, lending to bickerings and recriminations over a long period of time, resulting in a withdrawal of all mutual respect and consideration, and finally, a cessation of all marital relations, such a course of conduct and demeanor amounts to, and is, extreme cruelty and gross neglect of duty, for which reason the husband is entitled to a decree of divorce." *Stark* v. *Stark*, 28 N. P. (N. S.), 36, fourth paragraph of the syllabus.

"The term 'any gross neglect of duty,' made one of the causes for divorce under Section 11979, General Code, is elusive of concrete definition and its application as a cause for granting a divorce must depend upon the circumstances of the particular case." *Porter* v. *Lerch*, 129 Ohio St., 47, 193 N. E., 766, paragraph nine of the syllabus.

"Where a particular case presents evidence of aggravating circumstances, the adequacy of such aggravating circumstances to constitute gross neglect of duty is a question to be decided. What one person might consider sufficient another would not. A weighing of the evidence and an appraisal of its probative value is involved.

"It is said in 19 Corpus Juris, 69: 'Since the statutes do not define gross neglect of duty its interpretation is to be left to the sound discretion of the court.' " *Porter* v. *Lerch*, *supra*.

"As a general rule the verdict or decision of the trial court as to the sufficiency of the evidence to warrant the granting or denial of a divorce should not be disturbed on appeal unless it is very plain to the appellate court that the conclusion reached can not be supported by any rational view of the evidence." 9 Ruling Case Law, 470, Section 284.

"In reviewing a divorce proceeding, as the trial judge in the determination of facts has the opportunity of observing the demeanor and conduct of the witnesses, and is charged with the duty of carrying out and promoting a sound public policy, he should be allowed a wide latitude of discretion." *Widican* v. *Widican*, 23 Ohio App., 271, 155 N. E., 145.

"Without doubt courts of domestic relations have a broad discretion in actions for divorce wherein 'any gross neglect of duty' is an issue, and if discretion was involved in this particular case this court would dispose of it in summary fashion, because of our hesitancy to interfere therein." *Coleman, a Minor,* v. *Coleman, a Minor,* 68 Ohio App., 410, 41 N. E. (2d), 734.

"It is our judgment that a clear discretion is lodged in a trial court when the ground for divorce is 'any gross neglect of duty.' When the court is convinced from the facts before it that the power of performance abides within him who is derelict in his marital duty; and that the conduct complained of is reprehensible in one or the other understandings herein defined, the complainant is entitled to a divorce * * *." *Coleman* v. *Coleman, supra,* at page 412.

Finding no prejudicial error in any of the particulars specified in the assignments of error and argued in the brief, the judgment of the lower court is affirmed, at the costs of the appellant.

*Judgment affirmed.*

GUERNSEY, P. J., and MIDDLETON, J., concur.