OPINION
{¶ 1} Defendant-appellant Karen Clark appeals the decision of the Noble County Common Pleas Court entered in the divorce action between herself and plaintiff-appellee Darin Clark. The first issue presented for our review is whether the evidence sufficiently supported the granting of a divorce based upon gross neglect of duty and extreme cruelty. The second issue concerns whether the division of property was equitable. The third issue is whether the trial court abused its discretion in granting custody of the minor child to Darin. The fourth issue is whether the trial court awarded the proper amount of spousal support for the proper duration. The remaining issues are whether the trial court abused its discretion in failing to order Darin to pay for Karen's health insurance and for her attorney fees. For the reasons provided below, the judgment of the trial court is hereby affirmed.
 STATEMENT OF FACTS {¶ 2} Darin and Karen were married on December 19, 1987, in Ava, Noble County, Ohio. (Tr. 2). One child was born as issue of this marriage: Cory, born on December 30, 1990. (Tr. 2). The marriage lasted approximately 15 years during which most of the time Karen was a stay-at-home mom. When Cory was 10 or 11, Karen returned to work for approximately 33 hours per week at $12 an hour at Linda Clark's, Darin's mother, flower shop. Darin works at the prison and makes roughly $40,000 a year.
 {¶ 3} On December 30, 2002, Karen asked Darin to leave the marital home because she suspected him of having an affair. (Tr. 2, 67). Darin complied with her request. On January 3, 2003, Darin informed Karen that he wanted a divorce. That night Karen attempted to commit suicide by ingesting approximately 300 Phenobarbital pills. (Tr. 4, 68-69). Karen recovered from the attempted suicide and was then diagnosed as having Bipolar Disorder. (Tr. 70).
 {¶ 4} Darin filed for divorce on March 21, 2003. On March 27, 2003, when Darin stopped by the marital home to pick up Cory's diabetes supplies, an altercation occurred between Karen and Darin. Karen ripped up the divorce papers and began kicking Darin in the groin area. Corry witnessed the altercation and left the house crying.
 {¶ 5} On May 20, 2003, Karen filed a timely answer to the divorce complaint in which she contested the divorce. The matter proceeded to trial on June 11, 2003. On July 29, 2003, the trial court granted the divorce. Darin was named the residential parent and legal custodian of the minor child; Karen was ordered to pay child support.
 {¶ 6} The property was divided as follows. Darin received his PERS pension valued at $53,900, the Deferred Compensation account valued at $3,500, the 1992 Ford F150 valued at $3,500, the 1981 Ford F150 valued at $500, and the 2002 Yamaha subjected to an indebtedness (about $3,000) which he was required to pay. He was also awarded his tools, the cedar chest from his grandmother, his recliner, the jardinière from his grandmother, his baby quilt and the personal property in his possession. Karen received the marital home, which was valued at $120,000, subject to a mortgage of $71,000, thus, having a net value of $49,000, the 1994 Mercury Sable valued at $3,000, the Edward Jones account valued at $1,500, and the Mary Kay business that was subject to a $3,000 debt. She was also awarded the remaining personal property in her possession, including the Longaberger basket collection. Additionally, Karen was required to pay the Sears credit card, which amounted to $750. The trial court then held that in order to equalize the division of property, Darin was required to pay Karen $3,575.
 {¶ 7} The trial court also ordered Darin to pay spousal support in the amount of $500 a month for a period of six months. The trial court held that each party was responsible for their own attorney fees and ordered the costs to be divided equally. The trial court made no holding as to health insurance for Karen. Karen timely appealed from this order raising seven assignments of error.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 8} "Whether the evidence was insufficient to find a statutory ground for divorce."
 {¶ 9} The trial court granted Darin's request for a divorce based upon the fact that it found Karen was "guilty of gross neglect of duty and extreme cruelty." 7/29/03 J.E. Karen argues that sufficient evidence did not exist to support that finding. She contends that the trial court did not articulate specific findings meeting the grounds for divorce and, thus, the case must be reversed and remanded.
 {¶ 10} R.C. 3105.01 states, in pertinent part, that a common pleas court may grant a divorce based upon extreme cruelty or any gross neglect of duty. The trial court has a large amount of discretion in determining the sufficiency of the evidence in granting a divorce on the ground of gross neglect of duty and/or extreme cruelty. Buess v. Buess (1950), 89 Ohio App. 37;Verplatse v. Verplatse (1984), 17 Ohio App.3d 99, 100-101
(stating "[t]he determination of what facts constitute extreme cruelty in a given case must be left to the broad, but sound, discretion of the trial court"). Thus, a reviewing court may set aside a decree of divorce only when the record does not disclose any substantial evidence that reasonably supports the judgment, i.e. when the trial court abuses its discretion. Rice v. Rice
(Nov. 8, 2001), 8th Dist. No. 78682. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 11} Extreme cruelty has been defined as acts and/or conduct that "destroy the peace of mind and happiness of one of the parties to the marriage and thereby renders the marital relationship intolerable." Hunt v. Hunt (1989),63 Ohio App.3d 178, 181, quoting Pearson v. Pearson (Feb. 21, 1985), 2d Dist. No. 9097. Extreme cruelty, however, is not limited in scope to acts of physical violence or the reasonable apprehension thereof.Buess, 89 Ohio App. 37.
 {¶ 12} "The term `gross neglect of duty' is not subject to precise definition and its basis as a ground for divorce under R.C. 3105.01 is determined by the circumstances of each case."Rice, 8th Dist. No. 78682, citing Patterson v. Patterson, (July 22, 1982), 8th Dist. 43707 (party's failure to pay utility bills resulting in loss of electricity supports granting of divorce on grounds of gross neglect of duty); Williams v.Williams (July 1, 1993), 8th Dist. No. 62267 ("[g]ross neglect of duty is the failure of one party to perform a marital duty attended by circumstances of indignity or aggravation"). See, also, Hunt, 63 Ohio App.3d at 181. What one trial court might view as gross neglect of duty another might reject. Simpson v.Simpson, 5th Dist. No. 02-COA-006, 2002-Ohio-6266, at ¶ 10.
 {¶ 13} Karen contends that the journal entry does not specify what acts constituted extreme cruelty or gross neglect of duty. The journal entry merely states that the divorce was granted on the grounds of extreme cruelty and gross neglect of duty. Despite Karen's insistence, the trial court was not required by case law or statute to state the reasons supporting the grounds for divorce unless a request for findings of facts and conclusions of law was made. It was Karen's obligation to request findings of fact and conclusions of law; however, she did not. As such, there is little that can be gleaned from the record to decipher what specific acts the trial court found to meet the grounds for divorce. Therefore, we must look to the entire record to determine if there is any reasonable basis for the finder of fact to conclude that Karen was guilty of gross neglect of duty and/or extreme cruelty.
 {¶ 14} At trial, a letter written by Karen to Darin was admitted into evidence that described all of the problems she caused in the marriage. (Tr. 75-78). In this letter she states that she did not cook enough, did not keep the house neat and clean, spent too much money, abused the credit cards and caused them to be in debt, did not help enough with Cory's soccer team, had outbursts of anger, did not seek help when she knew she was depressed, failed to listen and communicate with Darin, and demanded Darin's attention and did whatever it took to get it. (Tr. 75-78, Plaintiff's Exhibit B). Furthermore, there was testimony at trial that she did not just abuse the credit cards, but she excessively abused the credit cards to the point where a mortgage was taken out on the house to pay off credit card debt. (Tr. 13, 75). Moreover, the evidence indicated a deterioration of the marriage in physical and non-physical aspects. (Plaintiff's Exhibit B). Taking all of these considerations in conjunction with one another, we do not find that it was not an abuse of discretion for the trial court to grant the divorce on the ground of gross neglect of duty, especially when considering the wide discretion the trial court has in making this determination. SeeSimpson, 5th Dist. No. 02-COA-006 (discussing deterioration of marriage by stating that it was as if the parties were not married when considering gross neglect of duty); Pelenda v.Pelenda, 5th Dist. No. 01CAF08040, 2002-Ohio-1123 (discussing lack of communication and physical relation as a factor for gross neglect of duty).
 {¶ 15} Thus, given the above and the fact that findings of fact were not requested, we are unable to find that the trial court abused its discretion in granting a divorce on gross neglect of duty. Consequently, we do not need to address the issue of whether the trial court erred in granting the divorce on the ground of extreme cruelty. If granting the divorce was proper on one of the grounds, granting a divorce on additional other grounds would amount to nothing more than harmless error.Bernard v. Bernard, 7th Dist. No. 00CO25, 2002-Ohio-552. Thus, this assignment of error is without merit.
 ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE {¶ 16} "Whether the trial court abused its discretion by abritrarily [sic] and inequitably dividing personal property without sufficient evidence."
 {¶ 17} "Whether the trial court abused its discretion by not allocating the division of the entire pers benefit accumulated during the marriage."
 {¶ 18} In these assignments of error, Karen finds fault with the trial court's division of property. She also finds fault with the trial court using January 1, 2003 as the date that the marriage ended for purposes of computing the valuation of PERS. She believes the trial court should have used the valuation from June 11, 2003, the final hearing date.
 {¶ 19} A reviewing court will not disturb a trial court's division of property in a divorce action absent an abuse of discretion. Middendorf v. Middendorf, 82 Ohio St.3d 397, 401,1998-Ohio-403. As aforementioned, abuse of discretion means the trial court's division of property was unreasonable, arbitrary, or unconscionable. Blakemore, 5 Ohio St.3d at 219.
 {¶ 20} Given that the PERS account is part of the property subject to division in this case, we must first determine whether the trial court erred in using the PERS value as of January 1, 2003, instead of the PERS value as of June 11, 2003, when it divided the property. The value of the PERS account as of January 1, 2003 was $53,897, however, in dividing the property, the trial court rounded that amount up to $53,900. The value of the PERS account as of June 11, 2003, was $56,829.24.
 {¶ 21} R.C. 3105.171(A)(3) states that marital property includes retirement benefits of the spouses that were acquired "during the marriage." "During the marriage" is defined as follows:
 {¶ 22} "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce * * *.
 {¶ 23} "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court." R.C.3105.171(A)(2).
 {¶ 24} The trial court specified that the marriage ended on or about January 1, 2003 and used that date for purposes of dividing the property. "In order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or de facto termination of the marriage, where reasonable under the facts and circumstances presented in a particular case." Berish v. Berish (1982),69 Ohio St.2d 318, 321. See, also, Gullia v. Gullia (1994),93 Ohio App.3d 653, 666. Thus, we review this determination under an abuse of discretion standard of review.
 {¶ 25} As the Supreme Court stated in Berish:
 {¶ 26} "The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. The public policy giving rise to equitable distribution is at least in part an acknowledgment that marriage is a shared enterprise or joint undertaking. While marriage is literally a partnership, it is a partnership in which the contributions and equities of the partners do differ from individual case to individual case. Assets acquired by the joint efforts of the parties should be, on termination, eligible for distribution. But the precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review." Berish, 69 Ohio St.2d at 319-320.
 {¶ 27} The reason for each party having an equal share of the property accumulated during the marriage is based on the presumption that the property was acquired due to the joint labors of the parties. Id. Yet, this presumption may not apply when the parties are living separate and apart and their joint efforts are not being used to acquire property. Following this reasoning, the trial court did not abuse its discretion in valuating the PERS account from the date of separation. Id.
 {¶ 28} Having addressed the PERS issue, we must next determine whether the property was divided equitably. A trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division. Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222. "The mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion." Kimmey v.Kimmey, 3d Dist. No. 1-01-68, 2001-Ohio-2305, quoting Cherry v.Cherry (1981), 66 Ohio St.2d 348. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of R.C. 3105.171. See Id. at 355.
 {¶ 29} The journal entry states that Darin is awarded assets having a total value of $61,400, while Karen is awarded assets having a total value of $53,500. The trial court then ordered Darin to pay Karen $3,575, in order to equalize the division of property. Therefore, the $3,575 (representing debt of Darin to Karen) is subtracted from Darin's amount, thus making the value of his assets and liabilities $57,825. The $3,575 amount to equalize the division of property must then be added to Karen's total of $53,500. Therefore, her total assets rise to $57,075. However, Karen was ordered to pay the debt on the Sears credit card, which amounted to $750.[1] Therefore, Karen's debt of $750 is subtracted from $57,075. Thus, her assets and liabilities would equal $56,325. The difference between the property division is $1,500.
 {¶ 30} However, an equitable distribution of the property need not necessarily be equal. Winkler v. Winkler (1997),117 Ohio App.3d 247, 252. Since equitable does not necessarily mean equal, an unequal property division, in and of itself, does not necessarily constitute an abuse of discretion. Cherry,66 Ohio St.2d at 352, 355. Thus, without more, a difference of $1,500 in the property division does not constitute a clear abuse of discretion. DeWitt v. DeWitt, 3d Dist. No. 9-02-42, 2003-Ohio-851 (stating that the wife's assets and liabilities amounted to $3,314, while the husband's assets and liabilities amounted to $3,881 and, thus, given the awarded amount, this difference was not an abuse of discretion). This argument is without merit.
 {¶ 31} The remaining argument that Karen makes under the division of property is that the trial court should have considered the value of Darin's tools in commuting the division of property. In the journal entry, the court stated the following:
 {¶ 32} "6. Plaintiff is also awarded his tools, the cedar chest from his grandmother, his recliner, the Jardinière from his grandmother, his baby quilt, and the personal property in his possession.
 {¶ 33} "* * *
 {¶ 34} "8. Defendant is also awarded the remaining personal property in her possession, including the Longaberger basket collection." 7/29/03 J.E.
 {¶ 35} The testimony at the divorce hearing revealed the tools Darin acquired during the marriage were worth approximately $4,500. (Tr. 24). It was also revealed that during the marriage Karen obtained an estimated 22 Longaberger baskets that ranged in value from $50 to $150. (Tr. 24-25). Karen argues that the baskets were gifts and, thus, were separate property and should not have been used to offset the award of the tools to Darin.
 {¶ 36} The party to a divorce action seeking to establish that an asset or portion of an asset is separate property by gift to one spouse, rather than marital property, has the burden of proof by clear and convincing evidence. R.C. 3105.171(A)(6) ((a)(vii). The trier of fact, as opposed to this court, is in a far better position to weigh the credibility of witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230. It is possible that the trial court did not believe that these baskets were gifts to her during the marriage, but rather were purchased by her during the marriage. As such, without more than a mere allegation that the baskets were gifts, Karen failed to meet her burden. Thus, it is difficult to hold that the trial court abused its discretion in using the Longaberger baskets to offset the tools. Consequently, these assignments of error are without merit.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 37} "Whether the trial court abused its discretion by granting custody to the appellee."
 {¶ 38} With regard to the review of custody matters, the Ohio Supreme Court has stated; "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. Trickey v. Trickey (1952),158 Ohio St. 9, 13. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80." Miller v. Miller
(1988), 37 Ohio St.3d 71, 74.
 {¶ 39} In awarding custody to Darin, the trial court referenced Karen's mental health and the March 27, 2003 incident where she repeatedly kicked Darin in the groin. The trial court stated, "Although Defendant takes medication, spontaneous emotional and physical outbursts by Defendant while on her medication indicate that the issue remains." 7/29/03 J.E. It then added that it did not believe that "beating someone up was the appropriate means of dealing with a perceived problem and a child should not be led to believe such." Finally, the court concluded that based on the factors set forth in R.C. 3109.04(F)(1), Darin should remain the residential parent and legal custodian. 7/29/03 J.E.
 {¶ 40} R.C. 3109.04 sets forth 10 factors the trial court should consider in allocating parental rights and responsibilities. The first factor is the wishes of the child's parents. R.C. 3109.04(F)(1)(a). Here, each party wants custody of the minor child. Therefore, this factor did not weigh in favor of either party.
 {¶ 41} The second factor is the child's wishes and concerns as expressed to the court. R.C. 3109.04(F)(1)(b). The court did not conduct an in-camera interview with the child in this case thus this factor was inapplicable.
 {¶ 42} The third factor addresses the child's interaction with his parents. R.C. 3109.04(F)(1)(c). Karen claimed that Cory was hurt by his father having a "lady friend." Darin claimed that Cory was apprehensive to be alone with Karen after the suicide attempt. However, testimony revealed that Cory got along well with both of his parents. Therefore, this factor did not weigh more heavily to one parent over the other parent.
 {¶ 43} The fourth factor addresses the child's adjustment to his home, school, and community. R.C. 3109.04(F)(1)(d). Cory has lived with Darin at Darin's parents since the separation. The living arrangements are not the best given that Cory sleeps on an air mattress while his father sleeps on the couch. However, Darin testified that once the divorce was settled, that he could start looking for another place to live (he was unable to do so given that he was supporting two households during the separation). Although, if Cory lived with his mother in the marital home he would have his own bedroom. However, Darin's parents testified that the living arrangements did not seem to bother Cory. Testimony also indicated that regardless of whom Cory lived with his school would not change. At the time of the hearing, Cory was receiving all A's and thus, it appears he was thriving in school despite all the turmoil in his life. Also from the testimony, it can be concluded that Cory had friends in the neighborhoods at both his mother's and father's residences. Therefore, even given the cramped living space, this factor did not weigh against Darin, but rather weighed equally for both parties.
 {¶ 44} The fifth factor is the mental and physical health of all persons involved in the situation. R.C. 3109.04(F)(1)(e). Cory has juvenile diabetes, however, evidence indicated that each parent was adequately educated about the condition and could provide the necessary care required. Thus, Cory's condition did not affect who could be named as custodial parent. Darin is on depression medication, however, other than mentioning it, the evidence did not indicate that his physical or mental health was at issue. Karen, on the other hand, is diagnosed with Bipolar Disorder. While she is taking medication to even out her mood swings, she still has had an outburst of physical and emotional anger. The March 27, 2003 incident of Karen kicking Darin repeatedly in the groin is evidence of this. Thus, the trial court found her mental and emotional health was still at issue. Given that evidence, it is hard to conclude that the trial court abused its discretion in making this determination. Thus, this factor weighed in favor of Darin being named custodial parent.
 {¶ 45} The sixth factor concerns which parent is more likely to honor the court approved parenting time of the non-custodial parent. R.C. 3109.04(F)(1)(f). Karen claimed that Darin has kept Cory from visiting her while he has been living with Darin. This accusation was not necessarily supported by the evidence. Both Darin and Karen testified that after the suicide attempt Cory was frightened to stay all night at Karen's, therefore, on at least three occasions Darin stayed at the marital home so that Cory would spend the night. Furthermore, it was also admitted that during the time period after the attempted suicide when Karen could not drive, Darin took Cory to see her. As such, it does not appear that Darin has kept Cory from visiting Karen, in fact, it looks as if by the above actions, he was encouraging it. Both parties testified that they would not hinder Cory from visiting the other party. Therefore, this factor weighed equally for each party.
 {¶ 46} The remaining factors are inapplicable to this case. R.C. 3109.04 (F)(1)(g), (h), (i), (j). Despite Darin's insinuation that the March 27, 2003 incident can be used to weigh against Karen under the eighth factor, R.C. 3109.04(F)(1)(h), it cannot. The eighth factor involves the determination of whether either party has been convicted of a criminal offense involving child abuse or of domestic violence. R.C. 3109.04(F)(1)(h). Karen's actions on that day do not weigh against her under this factor because the language of the statute requires a conviction. Since she was not convicted (a complaint was never filed), this factor is inapplicable.
 {¶ 47} However, the court is not limited to considering only the factors enumerated in this statute. R.C. 3109.04(F)(1). As such, the court could still consider the March 27, 2003 incident. It appears that at least Cory heard this interaction, though he may have also seen it. As the trial court stated, this type of interaction in the presence of a child was not appropriate and a child should not be led to believe that this was the appropriate way of dealing with a perceived problem. Accordingly, the trial court would not have abused its discretion in weighing this incident against Karen being named as the residential parent.
 {¶ 48} As such, considering all the factors in R.C.3109.04(F) and the March 27, 2003 incident, the trial court did not abuse its discretion in awarding custody to Darin. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 49} "Whether the trial court abused its discretion in failing to award a proper amount of spousal support for a sufficient duration."
 {¶ 50} When determining whether to award spousal support, the court must consider the factors listed in R.C. 3105.18(C)(1). The court must state its decision with sufficient detail that an appellate court can review the judgment to determine whether the court complied with the statutory requirements and whether it abused its discretion. Kaechele v. Kaechele (1988),35 Ohio St.3d 93, at paragraph two of the syllabus; Arn v. Arn, 9th Dist. No. 21078, 2003-Ohio-3794, at ¶ 24.
 {¶ 51} R.C. 3105.18(C)(1) sets forth fourteen factors the court shall consider in determining what amount, if any, of spousal support is "appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support." Those factors include: the parties' income; the parties' relative earning abilities; the parties' ages and health conditions; the parties' retirement benefits; the duration of the parties' marriage; the extent to which it would be inappropriate for a party, as custodian of a minor child of the marriage, to seek employment outside the home; the standard of living of the parties established during the marriage; the relative extent of education of the parties; the relative assets and liabilities of the parties, including any court-ordered payments; the contribution of each party to the earning ability of the other party; the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience; the tax consequences, for each party, of an award of spousal support; the lost income production capacity of either party that resulted from that party's marital responsibilities; and any other factor that the court expressly finds to be relevant and equitable.
 {¶ 52} After reviewing the journal entry, it appears that the trial court considered the factors listed in that section. The court considered the income of the parties and their earning abilities. R.C. 3105.18(C)(1)(a), (b). Darin is employed with the State of Ohio and has a gross annual income of approximately $41,800. Karen, although not currently employed, has a standing offer of employment that would generate an annual income of $16,600. Karen testified that she could start working tomorrow at the Briar Patch (flower shop). (Tr. 85). She testified that she would make $10 an hour and work approximately 33 hours a week. Furthermore, she is qualified for this type of work having previously worked at Darin's mother's flower shop.
 {¶ 53} The trial court also considered the ages and physical, mental and emotional conditions of the parties. R.C.3105.18(C)(1)(c). Darin and Karen are roughly the same age. While Darin is on an anti-depressant, there was no testimony that this in any way affected his employment. Karen also has some mental and/or emotional problems, however, this has not affected her employment in the past. She was able to maintain her employment at her mother-in-law's store until mid-December when she quit. (Tr. 59). (It is refuted that she quit, she claims she was fired, Darin's mother claims she quit.)
 {¶ 54} The court also considered the standard of living of the parties during the marriage. R.C. 3105.18(C)(1)(g). The court stated that they were living beyond their means, which is shown by the evidence at trial, specifically the credit card debts acquired during the marriage that were admittedly Karen's misuse. In fact, the marital home at one point in time was refinanced to pay off credit card debts.
 {¶ 55} After considering the above, the court ordered Darin to pay Karen a monthly spousal support award of $500 for six months. 7/29/03 J.E. paragraph 11. The trial court did not abuse its discretion in awarding this amount. The spousal support award appears short in duration, given that the marriage lasted 15 years, but considering she has a standing employment offer, which she can undertake without any additional training, and that she stated no interest in going to school to obtain a different line of employment, spousal support is not needed to contribute to her training or education. Rather, spousal support is just needed to, as the trial court put it, "re-establish herself," meaning to get accustomed to single life and being responsible for living within her means. Thus, given all the information that was considered, the trial court did not clearly abuse its discretion in awarding a short-term spousal support award. Therefore, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER SIX {¶ 56} "Whether the trial court abused its discretion by not addressing the health insurance needs of the appellant as part of its orders for sustenance."
 {¶ 57} Karen asked the court to order Darin to pay for her health insurance; Darin opposed this request. In the final judgment entry, the trial court made no finding as to health insurance. Karen argues that the trial court was authorized to order Darin to pay for the health insurance and, thus, its failure to order him to pay for her health insurance or to make a finding regarding the health insurance, amounted to an abuse of discretion.
 {¶ 58} Darin argues that the trial court did not abuse its discretion because given his salary, the spousal support award, and establishing and maintaining his own premises, he does not have the funds to pay $450 per month for Karen's health insurance. However, he was not opposed to the idea of enrolling her in his COBRA health plan as long as she paid the cost of the health insurance.
 {¶ 59} Trial courts are authorized to order a spouse to maintain health insurance coverage on the other spouse as part of a divorce decree. See, generally, Goode v. Goode (1991),70 Ohio App.3d 125, 131. Thus, it is within the trial court's discretion to order a spouse to pay for the health insurance of the other spouse. Webb v. Webb (Sept. 2, 1999), 3d Dist. No. 9-98-66. That said, the trial court did not abuse its discretion by failing to address the health insurance issue or for failing to order Darin to pay for Karen's health insurance.
 {¶ 60} The fact that the trial court did not state in its judgment entry that Darin was or was not ordered to pay for Karen's health insurance was not error. Since the trial court made no ruling on this issue, it is presumed that it was overruled. Ogrizek v. Ogrizek (May 14, 1997), 9th Dist. No. 18074 (stating that the trial court did not rule on the request for attorney fees in the divorce decree, but instead ignored the issue, and thus it was deemed overruled), citing Newman v. AlCastrucci Ford Sales, Inc. (1988), 54 Ohio App.3d 166, 169.
 {¶ 61} Furthermore, Karen has failed to establish that the trial court's failure to order Darin to pay her health insurance was an abuse of discretion. In her two-paragraph argument, Karen provides this court with no reason why it was an abuse of discretion for the court to fail to order Darin to pay for her health insurance. Given that there is no support for the allegation that the trial court abused its discretion, we cannot find an abuse of that discretion. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER SEVEN {¶ 62} "Whether the court abused its discretion by not awarding attorney fees to the appellant."
 {¶ 63} In this last assignment of error, Karen contends that the trial court abused its discretion in failing to order Darin to pay for her attorney fees. R.C. 3105.18(H) states:
 {¶ 64} "In divorce or legal separation proceedings the court may award reasonable attorney's fees to either party at any stage of the proceedings * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 65} The language of the statute states that the courtmay award attorney fees, thus making that determination permissible, not mandatory. If the legislature wanted to require a party to pay attorney fees it would have used the word shall in place of the word may. Therefore, given the language of the statute, the determination of whether attorney fees should be awarded to either party is within the court's sound discretion.State ex rel. Niles v. Bernard (1978), 53 Ohio St.2d 31, 34.
 {¶ 66} Furthermore, payment of attorney fees is primarily the function of the party who retains the attorney, and is not an equal obligation of both parties. Bowen v. Bowen (1999),132 Ohio App.3d 616, 642. While the above statute does authorize the trial court to order one party to pay for the other party's attorney fees, this only occurs if the court determines that the other party has the ability to pay the attorney fees. R.C.3105.18(H). Here, the court never determined that Darin could pay Karen's attorney fees. Furthermore, it does not appear that Karen was prevented from adequately protecting her rights or fully litigating this case because Darin was not ordered to pay attorney fees. Karen's only statement concerning attorney fees is that Darin should have to pay for hers because he, not she, wanted the divorce. (Tr. 113).
 {¶ 67} Additionally, Karen failed to provide adequate documentation to allow the trial court to order her attorney fees. In the case at hand, Karen testifies that she had received a bill for $1,029 that did not include the cost of the trial appearance. She did not offer the bill or include a detailed billing statement including the hourly fee and the time expended on the case. "[E]vidence must be presented at trial concerning the proper measure of attorney fees in order to allow an award."Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 41. Thus, her failure to provide the appropriate evidence thwarts her claim.
 {¶ 68} Considering all of the above factors, the trial court did not abuse its discretion in ordering each party to pay its own attorney fees. Consequently, this assignment of error lacks merit.
 {¶ 69} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.
[1] Evidence was offered at the divorce hearing that Karen charged to this credit card after an order had been given by the court that no more charges were to be acquired on the credit cards during the pendency of the divorce. Therefore, the trial court may have viewed it as equitable for the division of property to be unequal by $750, the balance of this credit card. However, the journal entry does not specify this conclusion.