OPINION
{¶ 1} Appellant, Dominic Rendina, appeals from the October 10, 2003 judgment entry of the Lake County Court of Common Pleas, Domestic Relations Division, adopting the magistrate's decision.
 {¶ 2} On January 12, 2001, appellee, Kathleen A. Rendina, filed a "complaint for divorce, allocation of parental rights and responsibilities, restraining orders, spousal support, child support, attorney's fees, and other equitable relief" against appellant, alleging extreme cruelty, gross neglect of duty, and incompatibility.[1] On that same date, the trial court awarded temporary custody of the minor children to appellee and visitation to appellant, as well as ordered that appellant be restrained from residing at the marital home. On January 25, 2001, appellant filed an answer along with objections to the temporary restraining orders.
 {¶ 3} Hearings were held before the magistrate on March 29, 2001, and on August 21, 2001, regarding appellee's motion for temporary support and appellant's objections to the temporary restraining orders.
 {¶ 4} At the March 29, 2001 hearing, appellee testified that she was the primary caregiver for the minor children. Appellee stated that appellant constantly threatened as well as emotionally and verbally abused her. Appellee said that appellant would threaten her by saying that if she did not watch her step, she would be six feet under. In addition, appellee indicated that appellant told her that if something happened to her car, the authorities would never trace it to him. Although appellant never struck appellee, appellee maintained that he struck the minor children. According to appellee, the minor children had to console her after the constant threats and screaming by appellant. Appellee said that one day when she put appellant's laundry away, she saw a gun in his drawer, which was the first time that she ever saw a weapon in her home. Appellee was terrified because the minor children would go through appellant's drawers to look for spare change. Since appellant vacated the residence, appellee stated that the environment was calm and the minor children were happy. Appellee testified that her monthly gross income was $1,550 from her two jobs. Since she filed the divorce action, appellee indicated that appellant never made any direct payments to her or the minor children and had the utilities turned off.
 {¶ 5} Appellant testified at the March 29, 2001 hearing that since vacating the marital home, he was living with his sister and paying her rent in excess of $500 per month. In the last three months, appellant stated that he paid nothing to appellee or the minor children. Appellant indicated that he has a life insurance policy and that the beneficiary listed is his nephew, Ricky Magri. Appellant said that he had no proof of any adulterous relationship with respect to appellee. According to appellant, the gun found by appellee in his drawer was a toy gun. Appellant stated that there were occasions where he would scream and yell at appellee and the minor children in the middle of the night.
 {¶ 6} At the August 21, 2001 hearing, appellant testified that he was ordered to leave the marital home within a four hour time frame. Appellant indicated that he was sixty-five years old and had a monthly income of $1,415, in addition to a $276.50 monthly pension.[2]
According to appellant, he suffered from migraine headaches and was on medication. Appellant contended that he never threatened or abused appellee nor violently abused the minor children in any manner. Appellant said that he did not want a divorce. On one occasion, appellant stated that appellee had a knife in her hand and handed it to him to use on her. Appellant maintained that he took the knife from appellee and laid it on the counter.
 {¶ 7} Pursuant to his August 22, 2001 order, the magistrate indicated that temporary custody of the minor children should remain with appellee; the previous order regarding appellant vacating the marital home was supported by the evidence and should remain in full effect, along with the order restraining property; appellant should pay the monthly mortgage in the amount of $600 on the former marital residence; and that appellant should pay seventy-two percent and appellee should pay twenty-eight percent of extraordinary health care expenses of the minor children not covered by insurance.
 {¶ 8} On September 4, 2001, appellant filed objections, and on September 7, 2001, appellee filed objections to the magistrate's order. A hearing was held on October 1, 2001, before the trial court on appellant's objections. Pursuant to its October 17, 2001 judgment entry, the trial court dismissed both of the parties' pleadings for being untimely.
 {¶ 9} Final hearings commenced before the magistrate on December 12, 2001, and on November 19, 2002.
 {¶ 10} At the December 12, 2001 hearing, appellee testified that appellant constantly made derogatory remarks in front of the minor children and other family members, in which he would falsely accuse her of seeing other people, drinking, and not having any regard for the minor children. Appellee stated that she was obese and eventually lost about one hundred pounds. Appellee had breast reduction surgery and indicated that appellant said that she cut off the best part of her. Prior to filing the divorce, appellee maintained that she never felt safe in her home.
 {¶ 11} At the hearing commencing on November 19, 2002, appellee testified that she earned an annual gross salary at a catering company in the amount of about $13,000. Appellee stated that that was her only job and that she lost her second job with a cleaning service. Appellee said that she made numerous improvements to the marital home. Appellee maintained that appellant did not enforce his rights under the visitation schedule, only visited with the minor children on Thursdays and Sundays, and that she encouraged them to call him. On one occasion, appellee returned home with her car dented from a hit-skip, and stressed that she was not drunk. Appellee said that her good friend, Martin Tominc, loaned her money and a minivan. Appellee indicated that she resented appellant's lack of involvement with the minor children, and the fact that he did not want to watch them while she was at work. Appellee stressed that she worked outside of the home because she had no money to pay the bills. According to appellee, appellant would leave notes around the house stating that appellee made the bills and she needed to pay them.
 {¶ 12} According to appellant, he worked full time, as well as overtime, and earned $61,478 gross, or $41,917 net, from January 1, 2002, through November 9, 2002, in addition to $12,485 net in Social Security. As of March 31, 2002, appellant's IRA had a balance of $42,826.33. Appellant's account summary for his 401(k) through September 30, 2002, contained a balance of $63,429.45. Appellant stated that he had $25,000 in cash hidden under his bed. Appellant maintained that he paid nothing to appellee because she was an adulterous. However, appellant stated that he would love to be with appellee again. Appellant said that he gambled away about $16,000 last year. Appellant contended that the minor children could "have the world" if he could take them away from appellee. Appellant indicated that he talked to his youngest daughter almost every day, but made no effort to enforce his rights under the visitation schedule.
 {¶ 13} Audrey Newlin ("Newlin"), appellee's mother, testified for appellee that she witnessed appellant make threats to appellee, indicating that if she did not watch her step, she would be six feet under. Newlin stated that the gun in the dresser drawer looked real. Newlin said that appellant told her that appellee had the best part of her cut off when she had the breast reduction surgery. According to Newlin, she loaned appellee money because she could not pay her bills.
 {¶ 14} In his April 10, 2003 decision, the magistrate recommended that appellee established that she was entitled to be granted a divorce on the grounds of extreme cruelty and gross neglect of duty; that appellee should be the residential parent and legal custodian of the minor children and that appellant should have visitation; that the former marital home be awarded to appellee and that the net value should be off-set against assets awarded to appellant; that appellant should pay appellee spousal support in the amount of $800 per month for thirty-six consecutive months; that appellee was voluntarily underemployed and that appellant should pay no child support; that appellant should pay 70.2 percent and appellee should pay 29.8 percent of any extraordinary medical expenses incurred for the minor children not covered by insurance; and that appellant should pay $10,000 of appellee's attorney fees bill of $12,660.
 {¶ 15} Appellant filed objections to the magistrate's decision on April 24, 2003, and a hearing was held before the trial court on June 27, 2003.
 {¶ 16} Pursuant to its October 10, 2003 judgment entry, the trial court overruled appellant's objections and adopted the magistrate's April 10, 2003 decision in its entirety. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:[3]
 {¶ 17} "[1.] The trial court in its final order and its objections judgment abused its discretion and erred as a matter of law in finding that sufficient proof of grounds of gross neglect of duty and extreme cruelty existed to grant [appellee] a divorce.
 {¶ 18} "[2.] The trial court's objections decision and final order abused its discretion and erred in application of law by unconstitutionally depriving [appellant] of his legal and equitable interests in the marital home.
 {¶ 19} "[3.] The trial court's objections judgment and final order abused its discretion and erred in application of law in the division of marital and separate property.
 {¶ 20} "[4.] The magistrate's decision, the trial court's [objections] decision, and the trial court's final order abused discretion in its non-modifiable award of spousal support.
 {¶ 21} "[5.] The trial court's objections judgment arbitrarily and discriminatorily abused discretion and erred in application of law in awarding [appellee] her attorney fees on the ground that `some of the tactics employed by [appellant] went beyond the point of a quest for justice and into the area of deliberate harassment or punishment.'"
 {¶ 22} In his first assignment of error, appellant argues that the trial court abused its discretion by finding that sufficient proof of grounds of gross neglect of duty and extreme cruelty existed to grant appellee a divorce. Appellant alleges that appellee's testimony focused solely on incompatibility. Appellant posits two issues for review. In his first issue, appellant contends that in its October 10, 2003 judgment entry and in its April 13, 2004 judgment entry, the trial court unreasonably and arbitrarily found that appellee provided sufficient evidence to merit a divorce based on the ground of gross neglect of duty by appellant. In his second issue, appellant stresses that pursuant to the foregoing judgment entries, the trial court unreasonably and arbitrarily found that appellee sufficiently proved the ground of extreme cruelty as appellant did not engage in any conduct calculated to permanently destroy the peace of mind and happiness of one of the parties to the marriage to render the marital relation intolerable.
 {¶ 23} This court stated in Marvin v. Marvin (Feb. 7, 1997), 11th Dist. No. 96-P0-185, 1997 Ohio App. LEXIS 430, at 3, that: "[i]t is well-settled that a trial court has broad discretion in determining the proper grounds for divorce and a reviewing court will not find otherwise absent an abuse of discretion. Buckles v. Buckles (1988),46 Ohio App.3d 102, 116 * * *. An abuse of discretion is more than just an error in judgment, but rather implies that the court's attitude is unreasonable, arbitrary or unconscionable. Booth v. Booth (1989),44 Ohio St.3d 142, 144 * * *." (Parallel citations omitted.)
 {¶ 24} "Gross neglect of duty, as a ground for divorce under R.C. 3105.01 depends upon the circumstances of the particular cause." Krepflv. Krepfl (Mar. 6, 1992), 11th Dist. Nos. 91-L-014 and 91-L-015, 1992 Ohio App. LEXIS 1001, at 5, citing Glimcher v. Glimcher (1971),29 Ohio App.2d 55. A trial court may rely on witness testimony to support gross neglect of duty as grounds for a divorce. Krepfl, supra, at 6.
 {¶ 25} We stated in Brennan v. Brennan (Nov. 9, 1995), 11th Dist. No. 94-P0-060, 1995 Ohio App. LEXIS 5037, at 7-8, that: "[t]he standard for determining extreme cruelty is found in Buess v. Buess (1950),89 Ohio App. 37 * * * where it is defined as:
 {¶ 26} `not limited in scope to acts of physical violence or the reasonable apprehension thereof, but is sufficiently broad to encompass acts and conduct the effect of which is calculated to permanently destroy the peace of mind and happiness of one of the parties to the marriage and thereby render the marital relation intolerable.' Id. at second paragraph of syllabus." (Parallel citation omitted.)
 {¶ 27} In the case at bar, because appellant's first and second issues are interrelated, we will address them in a consolidated fashion. Appellee's complaint for divorce against appellant alleged gross neglect of duty, extreme cruelty, and incompatibility. We disagree with appellant's contention that appellee's testimony only focused on incompatibility. Although we do not believe that the record supports the trial court's determination regarding gross neglect of duty, we agree with the trial court that appellee's testimony was credible as well as supportive of appellant's extreme cruelty. Also, appellant's allegations that appellee committed adultery and that she was away from the marital home because she was out drinking were not substantiated.
 {¶ 28} Here, the trial court found that appellant constantly yelled at appellee in front of the minor children, intentionally engaged in demeaning conduct and remarks about appellee, refused to assist appellee in repairing the household vehicle, and placed a toy gun which looked real in his drawer where appellee and the minor children were likely to find it. Based on these findings, the trial court did not abuse its discretion in granting appellee a divorce based upon extreme cruelty. Appellant's first and second issues are not well-taken. Thus, appellant's first assignment of error is without merit.
 {¶ 29} In his second assignment of error, appellant contends that the trial court abused its discretion by unconstitutionally depriving him of his legal and equitable interests in the marital home. Appellant posits two issues for review. In his first issue, appellant alleges that the abrupt and unsubstantiated issuance of the trial court's temporary restraining order unconstitutionally deprived him of his property interest without due process of law. In his second issue, appellant argues that the trial court abused its discretion pursuant to its October 10, 2003 judgment entry by failing to grant his motion to dissolve the temporary restraining order.
 {¶ 30} Civ. R. 75(I)(2) provides in part that: "[w]hen it is made to appear to the court by affidavit of a party sworn to absolutely that a party * * * to the action or a child of any party is about to suffer physical abuse, annoyance, or bodily injury by the other party, the court may allow a temporary restraining order, with or without bond, to prevent that action. A temporary restraining order may be issued without notice and shall remain in force during the pendency of the action unless the court or magistrate otherwise orders."
 {¶ 31} Since appellant's first and second issues are interrelated, they will be addressed in a consolidated manner. Again, on January 12, 2001, appellee filed an "ex parte motion for temporary restraining order for [appellant] to vacate the marital residence and to restrain [appellant] from returning to the marital residence." Attached to that motion was appellee's affidavit in which she stated that on more than one occasion, appellant had become emotionally and verbally violent and that he threatened her with physical harm; that appellant's rage was something that she severely feared; and that appellant threatened to kill her in the presence of the minor children.
 {¶ 32} Pursuant to its January 12, 2001 judgment entry, the trial court determined that appellee's motion was well-taken and ordered that appellant be restrained from residing at the marital home. Appellant filed objections on January 25, 2001, and a hearing was scheduled for February 12, 2001. Due to a scheduling conflict, the hearing was reset to March 1, 2001. We must note that appellant's counsel filed a motion for a continuance on February 21, 2001. Hearings were held before the magistrate regarding appellant's objections to the temporary restraining orders on March 29, 2001, and August 21, 2001. The magistrate filed his order on August 22, 2001, in which he determined that there was sufficient evidence to support appellee's motion. Appellant filed objections on September 4, 2001, and a hearing was held before the trial court on October 1, 2001. Pursuant to its October 17, 2001 judgment entry, the trial court properly dismissed appellant's objections to the magistrate's order because they were not timely filed in accordance with Civ. R. 53(C)(3)(b). Accordingly, in its October 10, 2003 judgment entry, the trial court stated that appellant's objections were not properly before it and were denied.
 {¶ 33} In any event, appellee's affidavit, in addition to her testimony at the hearings, provided sufficient evidence to support the magistrate's August 22, 2001 order. Appellant's verbal and emotional abuse created an annoyance as well as a reasonable fear of physical harm. See Civ. R. 75(I)(2); Ambrose v. Ambrose (Dec. 9, 1983), 11th Dist. No. 10-013, 1983 Ohio App. LEXIS 15084, at 4-5. Based on the record, appellant's contention that the trial court delayed him the opportunity for a hearing for over eight months and that the temporary restraining order was an unconstitutional deprivation of his real property interest and a clear denial of his due process rights is not well-founded. Appellant's first and second issues are not well-taken. Thus, appellant's second assignment of error is without merit.
 {¶ 34} In his third assignment of error, appellant alleges that the trial court abused its discretion and erred with respect to the application of law in the division of marital and separate property. Appellant raises two issues. In his first issue, appellant contends that the magistrate's April 10, 2003 decision and the trial court's October 10, 2003 judgment entry unreasonably and arbitrarily valued his 401(k) account at an amount reported near January 2001 rather than near the trial date of November 2002, where the account declined in net value due to the reduction in stock prices that occurred beyond his control. In his second issue, appellant stresses that the magistrate's decision and the trial court's judgment entry erred by finding that the $25,000 in cash under his bed was marital property.
 {¶ 35} The trial court has broad discretion in choosing the appropriate marriage termination date for purposes of property valuation.Berish v. Berish (1982), 69 Ohio St.2d 318, 319. Therefore, we will not disturb the trial court's finding absent an abuse of discretion. Id.
 {¶ 36} R.C. 3105.171(A) provides that:
 {¶ 37} "* * *
 {¶ 38} "(2) `During the marriage' means whichever of the following is applicable:
 {¶ 39} "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 {¶ 40} "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court."
 {¶ 41} In the case sub judice, because appellant's first and second issues are interrelated, we will address them together. The parties stipulated that "during the marriage" should mean from the date of the marriage, May 1, 1986, to the date of separation, January 11, 2001. We agree with the trial court that the use of the date of separation as the end date for "during the marriage" was equitable because the parties' finances were divided and appellant was properly removed from the home by court order. Although it is unfortunate for appellant that his 401(k) had a higher value in January 2001 than it did near the trial date in November 2002, based on the record, the trial court did not abuse its discretion by selecting January 11, 2001, as the termination date of the marriage.
 {¶ 42} In addition, although appellant states in his brief with this court that the $25,000 hidden under his bed was located in his sister's home after he and appellee separated, there is no evidence to that effect in the record. Further, appellant fails to show that the $25,000 constitutes separate property pursuant to R.C. 3105.171(A)(6)(a)(ii). As such, we agree with the trial court that appellant provided no evidence whatsoever that the $25,000 was not marital property. Appellant's first and second issues are not well-taken. Therefore, appellant's third assignment of error is without merit.
 {¶ 43} In his fourth assignment of error, appellant argues that the trial court abused its discretion in its non-modifiable award of spousal support. Appellant presents two issues. In his first issue, appellant maintains that the magistrate's April 10, 2003 decision erroneously determined that appellee was voluntarily underemployed while showing a need for appellant to pay spousal support due to appellee's imputed income of $20,000 per year. In his second issue, appellant alleges that the trial court erred by indicating that it does not retain jurisdiction to modify spousal support regarding its order that appellant pay spousal support for thirty-six months despite his advanced age of sixty-six and his eligibility for regular retirement after working fifty-one years for the same employer.
 {¶ 44} R.C. 3105.18 provides that:
 {¶ 45} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 * * *, the court of common pleas may award reasonable spousal support to either party. * * *
 {¶ 46} "* * *
 {¶ 47} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, * * * the court shall consider all of the following factors:
 {¶ 48} "(a) The income of the parties, from all sources * * *;
 {¶ 49} "(b) The relative earning abilities of the parties;
 {¶ 50} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 51} "(d) The retirement benefits of the parties;
 {¶ 52} "(e) The duration of the marriage;
 {¶ 53} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 54} "(g) The standard of living of the parties established during the marriage;
 {¶ 55} "(h) The relative extent of education of the parties;
 {¶ 56} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 57} "(j) The contribution of each party to the education, training, or earning ability of the other party * * *;
 {¶ 58} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience * * *;
 {¶ 59} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 60} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 61} "(n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 62} "* * *
 {¶ 63} "(E) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after * * * January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
 {¶ 64} "(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support."
 {¶ 65} In the instant matter, because appellant's first and second issues are interrelated, they will be discussed together. Pursuant to his April 10, 2003 decision, the magistrate set forth and discussed all of the R.C. 3105.18 factors in detail. The trial court complied with the requirements of R.C. 3105.18 and indicated that the magistrate gave the issue of spousal support due consideration as required pursuant to the statute.
 {¶ 66} Specifically, the trial court stated that although appellee's gross income was about $13,352, she was imputed an annual income of $20,000 for spousal and child support considerations. We must note that although appellee was granted spousal support in the amount of $800 per month for thirty-six months, appellant was not ordered to pay any child support for the three minor children. The magistrate's reference to appellee's "voluntary underemployment" includes the fact that the $20,000 annual income figure was imputed to her had she not been voluntarily underemployed.
 {¶ 67} Pursuant to R.C. 3105.18(E)(1), the trial court did not retain jurisdiction to modify the spousal support award since there was no change of circumstances and because the decree contained no provision specifically authorizing the court to modify the amount or terms of the spousal support award. As such, the trial court did not abuse its discretion. Appellant's first and second issues are not well-taken. Appellant's fourth assignment of error is without merit.
 {¶ 68} In his fifth assignment of error, appellant maintains that the trial court abused its discretion by awarding attorney fees to appellee on the ground that some of the tactics employed by appellant went beyond the point of a quest for justice and into the area of deliberate harassment or punishment.
 {¶ 69} This court stated in Snyder v. Synder (Sept. 21, 2001), 11th Dist. No. 2000-G-2307, 2001 Ohio App. LEXIS 4295, at 8-9, that:
 {¶ 70} "[t]he decision to award attorney's fees and the amount of the award are within the discretion of the trial court. Snyder v. Snyder
(1985), 27 Ohio App.3d 1, 4 * * *. Further, a trial court's decision regarding the appropriate level of attorney's fees will not be reversed on appeal unless the trial court abused its discretion. Hollon v. Hollon
(1996), 117 Ohio App.3d 344, 349 * * *. In Hansen v. Hansen [(Dec. 11, 1992), 11th Dist. No. 92-L-052], 1992 WL 366885, at 2, this court held that as long as the appellate court is able to determine the rationale underlying the award of fees, and the record supports the same, no abuse of discretion will be found. See, also, Kelly-Doley v.Doley [(Mar. 12, 1999), 11th Dist. No. 96-L-217], 1999 WL 262165, at 6." (Parallel citations omitted.)
 {¶ 71} In the instant case, again, we must reiterate that appellant was responsible for the delay regarding the objection hearings. In its October 10, 2003 judgment entry, the trial court stated that:
 {¶ 72} "[a]gain, [appellant] misstates the record and what occurred in the first 8 months this divorce was pending in choosing to assign responsibility for delay on the [c]ourt or on [appellee] but not to [himself]. Counsel overlooks [appellant's] [m]otion for [c]ontinuance filed February 21, 2001, and [appellant's] [m]otion for [e]xtension of time filed December 3, 2003, and again on January 14, 2003. [Farley v.Farley (1994), 97 Ohio App.3d 351,] requires the [c]ourt look at the totality of each parties trial tactics and behaviors. [Appellant's] counsel during the objection hearing before the [c]ourt on June 27, 2003 stated [that appellant] is prepared to appeal his case as to objections 1 and 2 (the finding of grounds sufficient for divorce) to the United States Supreme Court if necessary.
 {¶ 73} "The above statement reinforces the [m]agistrate's finding that [appellant's] tactics have gone beyond a quest for justice into the area of deliberate harassment or punishment. * * *"
 {¶ 74} We agree. Appellant states in his brief that appellee's counsel was the only one that made the remark regarding appealing to the United States Supreme Court if necessary. However, the transcript from the June 27, 2003 hearing shows that appellee's counsel made reference to appellant's attitude and the fact that appellant previously stated that he would appeal to the United States Supreme Court.
 {¶ 75} The trial court properly determined that appellee does not have income or assets from which to pay her own attorney fees but that appellant does have sufficient income or assets to pay at least a portion of appellee's attorney fees. The record establishes that appellant tried to block the divorce proceedings, which increased appellee's attorney fees. The trial court found that under the circumstances, appellee's attorney fees bill in the amount of $12,660 incurred at the hourly rate of $150 per hour was reasonable and necessary, and that appellant should pay $10,000 of her bill. Based on the foregoing, we cannot conclude that the trial court abused its discretion in awarding attorney fees to appellee. Appellant's fifth assignment of error is without merit.
 {¶ 76} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.
Grendell, J., Rice, J., concur.
[1] Appellant and appellee, who have an age difference of twenty-three years, were married on May 1, 1986, and three children were born as issue of the marriage: Alicia M. Rendina, d.o.b., April 10, 1988; Briana A. Rendina, d.o.b., May 24, 1989; and Cassandra L. Rendina, d.o.b., June 9, 1993, ("minor children").
[2] In his affidavit, appellant indicated that his gross monthly income was $5,000.
[3] Pursuant to this court's April 7, 2004 judgment entry, we stated that the trial court's October 10, 2003 judgment entry merely overruled appellant's objections and adopted the magistrate's decision, and, thus, did not constitute a final appealable order. Therefore, we remanded this case to the trial court for the sole purpose of issuing a final appealable order. On April 13, 2004, the trial court filed its judgment entry. Pursuant to this court's May 3, 2004 judgment entry, we determined that there was a final appealable order.