[Cite as *In re K.B.*, 2013-Ohio-858.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


|                    |   |                           |
|--------------------|---|---------------------------|
| IN RE:             | : |                           |
|                    |   | CASE NO. CA2012-03-063    |
| K.B.               | : |                           |
|                    |   | O P I N I O N             |
|                    | : | 3/11/2013                 |
|                    |   |                           |
|                    | : |                           |
|                    |   |                           |
|                    | : |                           |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2009-0090


Jeannine Barbeau, 3268 Jefferson Avenue, Cincinnati, Ohio 45220, Guardian Ad Litem

John D. Treleven, 810 Sycamore Street, 2nd Floor, Cincinnati, Ohio 45202, for appellant

Fred Miller, Baden & Jones Building, 246 High Street, Hamilton, Ohio 45011, for appellee, Virginia Sharp

Michael T. Gmoser, Butler County Prosecuting Attorney, Shannon Haferkamp, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Department of Job and Family Services, Children Services Division

Heather Felerski, P.O. Box 181342, Fairfield, Ohio 45018, for Misty Paul

Richard Koehler II, 205 Society Bank Building, 6 South Second Street, Hamilton, Ohio 45011-2729, for Misty Paul


**M. POWELL, J.**

{¶ 1} Appellant, J.B. (Father), appeals a decision of the Butler County Common

Pleas Court, Juvenile Division, granting legal custody of his daughter, K.B., to appellee, Virginia Sharp, a nonrelative friend of the child's mother (Mother).

{¶ 2}   K.B. was born in June 2006.  At the time, her parents were married to one another.  They separated in September 2007 and subsequently co-parented K.B.  In July 2008, following an incident during which Father "slammed" Mother against a wall and K.B.'s "hair got pulled out," Father was charged with domestic violence.  The charges were dismissed when, according to Mother, the police officer did not appear for the hearing. Mother subsequently obtained a Civil Protection Order (CPO).  It is in effect until July 28, 2013.  The CPO initially forbade any contact between Father on one hand and Mother and K.B. on the other hand.  However, in September 2009, Father successfully moved to remove K.B. from the CPO.  The child's parents were divorced in July 2009.

{¶ 3}   Mother has a long history of mental health and substance abuse issues.  As a result, in September 2008, Mother and K.B. went to live with Sharp so that Mother could get back on her feet and take care of K.B.  The child was 27 months old when she came to live with Sharp and Sharp's mother.

{¶ 4}   On March 26, 2009, the Butler County Department of Job and Family Services, Children Services Division (the Agency), filed a complaint alleging that K.B. was a dependent child.  The Agency filed the complaint because of Mother's serious and unresolved mental health issues, including suicidal ideation and attempts, and her substance abuse issues. The complaint also stated that physical abuse of K.B. had been indicated in 2008 as a result of domestic violence between Father and Mother, and referred to the CPO in place "preventing [Father] from having contact with [K.B.] and [Mother]."  By ex parte order, the juvenile court granted temporary custody of K.B. to Sharp.  K.B. was two and one-half years old.

{¶ 5}   On March 30, 2009, Father moved for legal custody of his daughter but withdrew his motion in November 2009.  K.B. was adjudicated a dependent child in April

2009. A case plan was developed for Father and Mother. Following the removal of K.B. from the CPO in September 2009, Father was granted supervised visitation. Temporary custody of K.B. remained with Sharp. In December 2010, Sharp moved for legal custody of K.B. Custody hearings were held from November 2010 to August 2011. During the proceedings, Father was granted unsupervised visitation in March 2011. The child's attorney/Court Appointed Special Advocate (CASA), the child's guardian ad litem, and Mother recommended that K.B. be placed in the legal custody of Sharp. Father opposed Sharp's motion for legal custody and testified he wanted to be awarded custody of K.B.

{¶ 6} On November 7, 2011, the magistrate issued a decision awarding legal custody of K.B. to Sharp and granting visitation to Mother and Father. The magistrate found that:

> [T]he court finds it is in [K.B.'s] best interest to be placed in the legal custody of Virginia Sharp. Mother has recognized that she is not in a position to care for [K.B.] at this time, and therefore supports Ms. Sharp in her request for custody.
>
> Father's circumstances are concerning to the court. On one hand, the court finds that father has the potential to become a full time parent for [K.B.]. Father and [K.B.] clearly are bonded. [K.B.] loves her visits with father, and has a good relationship with father's girlfriend. Father co-parented [K.B.] with mother when [K.B.] was younger. However, father has lived in four or five separate residences during the two and half years this case has been open. Father was unemployed until June 2011, over two years after this case started; and his job is with a temporary service with the possibility of a permanent hire at the end of his probationary period. His job evaluation shows only average performance levels. Finally, and most troubling, father has shown a lack of insight into his behavior that has resulted in domestic violence charges being filed by three separate women. Nevertheless, father should be and remain actively engaged in [K.B.'s] life.
>
> [K.B.] is still an emotionally fragile child. She has been diagnosed with Attachment Disorder. Her counselor testified repeatedly that [K.B.] needs consistency and stability in her life. [K.B.] has been in the custody of Ms. Sharp for two and a half years in her five years of life. The court finds that Ms. Sharp is best able at this time to provide [K.B.] with the consistency and stability [K.B.] needs.

The juvenile court overruled Father's objections to the magistrate's decision and affirmed the decision in its entirety.

{¶ 7} Father appeals, raising one assignment of error:

{¶ 8} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT, FATHER, WHEN IT AWARDED CUSTODY OF THE CHILD TO APPELLEE, WHO IS A LEGAL STRANGER TO THE CHILD.

{¶ 9} Father argues the juvenile court abused its discretion when it granted legal custody of K.B. to Sharp, a nonrelative. Specifically, Father argues the juvenile court (1) improperly considered mere allegations of domestic violence against Father, (2) did not give sufficient weight to the fact he remedied all the conditions brought forth by the dependency complaint, (3) ignored Sharp's tenuous financial situation, and (4) failed to address the fact Father is K.B.'s blood relative, whereas Sharp is not.

{¶ 10} R.C. 2151.353(A)(3) provides that if a child is adjudicated a dependent child, the court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" "Legal custody vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact. * * * Unlike permanent custody, granting legal custody does not terminate the parent-child relationship." *In re M.M.*, 12th Dist. No. CA2010-12-034, 2011-Ohio-3913, ¶ 7; R.C. 2151.011(B)(19).

{¶ 11} A juvenile court's custody determination under R.C. 2151.353 must be based on the best interest of the child. *In re J.D.E.*, 12th Dist. No. CA2012-01-016, 2012-Ohio-4223, ¶ 7. In order to determine the best interest of the child, R.C. 3109.04(F)(1) requires that the juvenile court consider all relevant factors, including, but not limited to, any applicable factors set forth in R.C. 3109.04(F). *Id.* at ¶ 8.

{¶ 12} An appellate court reviews a juvenile court's custody determination for an abuse of discretion. *In re M.A.*, 12th Dist. No. CA2011-02-030, 2012-Ohio-545, ¶ 19. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "As 'custody issues are some of the most difficult and agonizing decisions a trial judge must make,' the judge must be given 'wide latitude in considering all the evidence' and the decision must not be reversed absent an abuse of discretion." *In re J.E.D.* at ¶ 9, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re M.A.* at ¶ 19.

{¶ 13} Before we address Father's arguments under his assignment of error, we must first determine whether he has waived them.

{¶ 14} Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding as required by Juv.R. 40(D)(3)(b)." This waiver under the rule embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal. *In re K.P.R.*, 197 Ohio App.3d 193, 2011-Ohio-6114, ¶ 9 (12th Dist.). The objections must be "specific and state with particularity all grounds for objection." Juv.R. 40(D)(3)(b)(ii). "The failure to file specific objections is treated the same as the failure to file any objections." *In re D.R.*, 12th Dist. No. CA2009-01-018, 2009-Ohio-2805, ¶ 29.

{¶ 15} "This court previously ruled that unless the appellant argues a 'claim of plain error,' the appellant has waived the claimed errors not objected to below." *In re K.P.R.* at ¶ 10, citing, inter alia, *In re D.R.* at ¶ 30 (appellant did not specifically object to the magistrate's

foregoing finding and does not claim plain error here and is thereby precluded from raising this issue on appeal), and *In re C.P.*, 12th Dist. No. CA2010-12-025, 2011-Ohio-4563, ¶ 35 (by failing to raise specific objections regarding custody granted to relatives, or argue plain error in her brief, appellant is precluded from raising this issue on appeal and from challenging the juvenile court's adoption of the magistrate's finding).

{¶ 16} Although Father filed objections to the magistrate's decision, he did not specifically raise the issues of Sharp's financial situation or Father's blood relationship (and Sharp's lack of same) to K.B. Further, Father does not claim plain error here. He is therefore precluded from raising these issues on appeal.

{¶ 17} We now address Father's remaining two issues. Father first argues that the juvenile court erred when it considered mere allegations of domestic violence against Father in its analysis of the best interest factors under R.C. 3109.04(F)(1). Father asserts that absent a conviction, allegations of domestic violence cannot be considered under R.C. 3109.04(F)(1)(h), and cites *Clark v. Clark*, 7th Dist. No. 03 NO 308, 2004-Ohio-1577, in support.[1]

{¶ 18} In *Clark*, Karen Clark repeatedly kicked Darin Clark in the groin on March 27, 2003. In discussing the incident under R.C. 3109.04(F)(1)(h), the Seventh Appellate District held that the March 27, 2003 incident could not be used against Karen under R.C. 3109.04(F)(1)(h) because she had not been convicted of domestic violence:

> The eighth factor involves the determination of whether either party has been convicted of a criminal offense involving child abuse or of domestic violence. R.C. 3109.04(F)(1)(h). Karen's actions on that day do not weigh against her under this factor because the language of the statute requires a conviction. Since

---

1. R.C. 3109.04(F)(1)(h) provides in relevant part that "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to, whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code [domestic violence]."

- 6 -

she was not convicted (a complaint was never filed), this factor is inapplicable.

*Clark* at ¶ 46. The appellate court held, however, that the trial court was not limited to considering only the factors in R.C. 3109.04(F)(1), and that "the trial court would not have abused its discretion" in considering the incident and "weighing [it] against Karen being named as a residential parent." *Id.* at ¶ 47.

{¶ 19} A review of the juvenile court's decision shows that in its analysis of the factor under R.C. 3109.04(F)(1)(e) (the mental health of all persons involved), the court noted that although Father completed a domestic violence intervention program, "father felt that he was the victim of abuse and did nothing wrong. Father has been the respondent in domestic violence cases filed by three separate women with whom he has had a relationship."

{¶ 20} In its analysis of the R.C. 3109.04(F)(1)(h) factor, the juvenile court did not cite the foregoing allegations of domestic violence. Rather, the court noted that as a result of the 2008 domestic violence incident between Mother and Father, Mother filed domestic violence charges against Father. The court also referred to the CPO and noted that both Mother and K.B. were initially protected parties.

{¶ 21} It is undisputed that Father was never convicted of domestic violence. The record shows, however, and Father admitted during the custody hearings, that over the years, three different women – Mother, a former wife, and the mother of one of his sons – filed protection orders against Father.[2] The CPO filed by Mother is in effect until July 28, 2013, and was in place during the proceedings below. Nonetheless, Father testified that all the protection orders, including the CPO filed by Mother, were based on false allegations. Father also touted the fact he had never been convicted of domestic violence, and denied

---

2. The record indicates that Father's former wife filed protection orders against him in 1991 and 1998; the mother of his son filed a protection order in 2001; and Mother filed the CPO in 2008. A protection order was also filed against Father in 2000.

"victimizing" any women.

{¶ 22} The record shows that Father successfully completed a batterer's intervention program and that he participated in individual counseling. However, Father testified that the batterer's program taught him he was the victim in the relationships and "the one being abused." Further, he did not benefit from the counseling because he did not need counseling. A caseworker from the Agency testified that Father's participation in the batterer's program was minimal, Father gained little insight from the program, and Father refused to accept responsibility for any violent actions on his part because he denied ever committing domestic violence.

{¶ 23} In light of the foregoing, we find the juvenile court did not err in considering the several allegations of domestic violence made against Father in determining what was in the best interest of K.B. *See Heilman v. Heilman*, 3rd Dist. No. 6-12-08, 2012-Ohio-5133 (citing R.C. 3109.04(F)(1)(h), the appellate court held that the trial court did not abuse its discretion in holding that father's shared parenting plan was not in the best interest of the child where, inter alia, there was an incident of physical violence between the parents giving rise to a CPO).

{¶ 24} Father next argues the juvenile court did not give sufficient weight to the fact he remedied all the conditions set forth in the dependency complaint. Father asserts that because he is employed, has lived in the same residence for over a year, and has successfully completed the batterer's program, all requirements under his case plan, he has successfully remedied all the problems that resulted in the filing of the dependency complaint. We disagree.

{¶ 25} It is well-established that a parent's completion of case plan services does not equate to, or compel a finding that the parent has substantially remedied the conditions that caused the removal of the child from the home. *In re E.B.*, 12th Dist. Nos. CA2009-10-139

and CA2009-11-146, 2010-Ohio-1122, citing *In re Mraz*, 12th Dist. Nos. CA2002-05-011 and CA2002-07-014, 2002-Ohio-7278. "A parent can successfully complete the requirements of a case plan, but not substantially remedy the conditions that caused the children to be removed, as the case plan is 'simply a means to a goal, but not the goal itself.'" *In re E.B.* at ¶ 30, quoting *In re C.C.*, 8th Dist. Nos. 94013 and 94014, 2010-Ohio-780, ¶ 25.[3]

{¶ 26} The record shows, and the juvenile court found, that Father and K.B. are clearly bonded, love one another, and enjoy their visits. The record also shows, however, that while Father is employed and has a residence, these goals were only recently reached. This case began in March 2009. Since then, Father has lived in four separate residences. While he has been renting his current apartment since August 2010, he did not have any furniture until March 2011 and as a result, had been living with his girlfriend. In her September 2011 final report, the child's guardian ad litem noted that while the apartment has a bedroom for K.B. with a bed, toys, and clothes, the toys were not age-appropriate and the clothes no longer fit as they appeared to be primarily the clothes and toys K.B. had before March 2009.

{¶ 27} During the August 16, 2011 hearing, Father testified he was employed in a "temp-to-hire job" as a machine operator, started the job on June 13, 2011, and was hoping to be permanently hired at the end of his probationary period. However, his job evaluation showed only average performance levels in the areas of job ability, productivity, and safety. Father testified that between March 2009 and June 2011, he was unemployed most of the time and was doing odd jobs here and there. During the March 2011 hearing, the caseworker for the Agency testified that to her knowledge, Father did not have any disability that would prevent him from working.

---

3. Both *In re Mraz* and *In re E.B.* were permanent custody cases. Nonetheless, we find that their holding regarding the connection between successfully remedying the conditions that caused a child to be removed from home and completing a case plan equally applies to legal custody cases involving case plans under R.C. Chapter 2151.01.

{¶ 28} With regard to the batterer's program, the record shows that while Father successfully completed it, he gained very little insight from it and denied committing domestic violence against any woman. As stated earlier, Father asserts that all the protection orders were based on false allegations. The caseworker testified that in addition to the three women, a man had also filed for a protection order against Father.

{¶ 29} K.B.'s therapist testified that consistency and structure were the most important things in K.B.'s life. K.B. has been in the temporary custody of Sharp since March 2009 and has continuously lived with her since September 2008. The record shows that Sharp has consistently met all of K.B.'s needs and has provided stability, structure, and consistency in K.B.'s life. K.B. and Sharp have a bonded relationship and K.B. is quite attached to Sharp's mother who resides with Sharp and K.B. K.B. is well-adjusted in Sharp's home.

{¶ 30} Father's love and desire to parent K.B. is apparent. Nonetheless, upon thoroughly reviewing the record, we find no abuse of discretion by the juvenile court in granting legal custody of K.B. to Sharp rather than to Father. Leaving K.B. in the care of Sharp minimizes the disruption to the child and allows her to maintain the strong bond she has forged with Sharp and Sharp's mother for the last two and one-half years, while also allowing her to maintain the bond she has with Father. As noted earlier, a grant of legal custody does not terminate the parent-child relationship. *In re M.M.*, 2011-Ohio-3913 at ¶ 7. In the present case, Father's parental rights were not terminated. He has retained residual parental rights and responsibilities with K.B., including contact and visitation and a duty to support. *Id.*

{¶ 31} Father's assignment of error is accordingly overruled.

{¶ 32} Judgment affirmed.

HENDRICKSON, P.J. and S. POWELL, J., concur.