[Cite as *In re W.P.*, 2023-Ohio-4083.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2023-04-008 |
| W.P., JR., et al. | : | O P I N I O N<br>11/13/2023 |
| | : | |
| | : | |
| | : | |
| | : | |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. AND20220092; AND20220093

Melissa S. Upthegrove, for appellant.

Jess C. Weade, Fayette County Prosecuting Attorney, and Rachel S. Martin, Assistant Prosecuting Attorney, for appellee.

**M. POWELL, J.**

{¶ 1}   April Wilson ("Mother"), appeals the decision of the Fayette County Court of Common Pleas, Juvenile Division, granting Yalonda Pointer (paternal "Grandmother") legal

custody of Mother's two children. For the reasons outlined below, we affirm the juvenile court's decision.

{¶ 2} On March 14, 2022, Fayette County Children's Services ("FCCS") filed a complaint alleging W.P. Jr. was an abused and legally dependent child and that his brother, W.W. was also dependent. The complaint further alleged that Mother had recently thrown a phone at W.P. Jr. and punched him in the face after Mother became angry with him for not watching W.W. in a parking lot. W.P. Jr. informed FCCS there were other instances of abuse as well. The children were quickly removed from Mother's custody and placed in the temporary custody of FCCS. FCCS, in turn, then placed the children with Grandmother. It should be noted that the children's father is incarcerated and played no active part in any of the proceedings.

{¶ 3} On June 1, 2022, the trial court found, after considering the testimony presented as well as the admissions of Mother, that W.P. Jr. and W.W. were dependent children and that W.P. Jr. was abused by Mother. Meanwhile, a case plan was developed by the Fayette County Department of Job and Family Services ("FCDJFS") and approved by the trial court. The plan, with the goal of reuniting Mother with the children, tasked her with, among other things, obtaining both mental health and substance abuse assessments, following all recommendations of any medical providers, completing anger management and parenting programs, and regular drug testing.

{¶ 4} During these proceedings, Grandmother moved for legal custody of the two children. By agreement of the parties, the motion was not heard until March 24, 2023. At the hearing, the court heard testimony from Mother, Grandmother, Mother's sister, and Mother's caseworker at FCCS.

{¶ 5} The testimony regarding the children's condition in Grandmother's custody was uncontroverted. W.P. Jr. was doing well in school, obtained advanced levels of English

and math, and was in a gifted program. W.W., who had a history of developmental delays, made significant progress with his speech and vocabulary. He was also enrolled in speech therapy programs at school and at Dayton Children's Hospital. Both children participated in sports and other activities. Despite previously being truant, they now had perfect attendance at school. At Grandmother's house, the children shared bunk beds in one of her bedrooms. Ultimately, Grandmother testified, "the boys have been healthy . . . happy . . . [and] secure" in her care.

{¶ 6} Testimony concerning Mother's condition and compliance with the FCDJFS case plan was not as uniformly positive. After the children were placed in the custody of Grandmother, Mother completed parenting and anger management classes. Mother also maintained employment and housing. However, Mother continued to have instances of emotional outbursts. Her caseworker reported various occurrences during their interactions, and Mother had one outburst outside of court. In addition, one of Mother's visits with the children had to be cut short after she became overly emotional. Outside of that incident, Mother's supervised visits with the children went well. All involved in the case agreed Mother was bonded with the children, and Grandmother expressed willingness to let the visits continue.

{¶ 7} Consistent with her case plan, Mother sought out evaluations and treatment. However, over the course of the year, she saw various providers and repeatedly dropped out of programs due to dissatisfaction in one respect or another. As a result, Mother struggled to timely obtain the full psychological evaluation and alcohol and drug assessment required by her case plan. This delayed the custody hearing. Mother often claimed the reason for these setbacks, as well as her continuing outbursts, was that medical providers and government workers refused to "hear" her.

{¶ 8} Mother also stopped taking mental health medications. She claimed this was advised by her providers, but Mother's caseworker testified it was against provider recommendation. Further, Mother had access to medical marijuana and claimed to only use it once a day to sleep, but her drug tests indicated "extremely high levels" of marijuana use. Mother had no explanation for these results. In the opinion of Mother's caseworker, Mother's mental health remained a "major concern."

{¶ 9} Both FCCS and the children's guardian ad litem ("GAL") recommended to the trial court that Grandmother retain custody of the children but that Mother still receive visitation rights. The GAL's report to the court reflected that the children desired to continue living with Grandmother and have visitations with Mother.

{¶ 10} In its March 31, 2023 order, the trial court granted Grandmother legal custody. Mother was granted parenting time. This appeal followed.

{¶ 11} Mother raises a single assignment of error for our review:

{¶ 12} THE TRIAL COURT'S AWARD OF LEGAL CUSTODY TO A NON-PARENT RELATIVE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THUS CONSTITUTES REVERSIBLE ERROR

{¶ 13} R.C. 2151.353(A) provides that when a child has been adjudicated abused, dependent, or neglected, a juvenile court may award legal custody to a nonparent. "A juvenile court's custody determination under R.C. 2151.353 must be based on the best interests of the child." *In re A.M.W.*, 12th Dist. Butler No. CA2021-12-159, 2022-Ohio-2913, ¶ 18; *In re K.B.*, 12th Dist. Butler No. CA2012-03-063, 2013-Ohio-858, ¶ 11. To determine the best interests of the child, the juvenile court considers all relevant factors, including those identified in R.C. 3109.04(F). *Id*.

{¶ 14} Under R.C. 3109.04(F), courts consider various factors, but some are particularly relevant for review here: (1) the wishes of the parents; (2) the wishes of the

- 4 -

children; (3) the children's interaction and relationships with those who may significantly affect their best interest; (4) the children's adjustment to any new home, school, and community; (4) the mental and physical health of all persons involved; (5) who is more likely to honor and facilitate court-approved parenting time rights; and (6) whether a parent has been convicted of or pleaded guilty to child abuse or neglect.  "'[N]o single factor is determinative of the best interest of a child; rather, the determination should be made in light of the totality of the circumstances.'"  *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2021-08-078, 2022-Ohio-1805, ¶ 42, quoting *Suess v. Suess*, 12th Dist. Warren No. CA96-01-006, 1996 WL 571362, *2 (Oct. 7, 1996).

{¶ 15} In legal custody matters, the judgment of a trial court is presumed correct; it will not be disturbed unless an abuse of discretion occurs.  *Seng v. Seng*, 12th Dist. Clermont No. CA2007-12-120, 2008-Ohio-6758, ¶ 10.  Stated differently, "'[t]he discretion a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned.'" *Grover v. Dourson*, 12th Dist. Preble No. CA2018-07-007, 2019-Ohio-2495, ¶ 15, quoting *Kenney v. Kenney*, 12th Dist. Warren CA2003-07-078, 2004-Ohio-3912,¶ 6.  Ultimately, if the record contains competent and credible evidence which supports the trial court's decision, that decision will not be disturbed, as that court was in the best position to "'to view the demeanor, attitude, and credibility of each witness [in person].'" *Seng* at ¶ 16, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶ 16} The trial court did not abuse its discretion in awarding custody of the children to Grandmother.  Based on the evidence and testimony presented to it, the trial court made many findings that considered various relevant factors, including those identified in R.C. 3109.04: (1) Mother's desire for custody; (2) the GAL's report and recommendations which documented the children's desire to stay with Grandmother; (3) the successful assimilation

of the children into Grandmother's home; (4) the children's recent successes in school and participation in extracurricular activities while under Grandmother's care; and (5) Grandmother's willingness to let Mother continue visiting the children on a regular basis. The trial court also found "Mother has significant mental health issues." Upon review of the record, the trial court's decision was based on competent and credible evidence.

{¶ 17} Mother undoubtedly made progress with her case plan. However, it is well established that completion of a case plan's requirements does not entitle her to regain custody of the children. *In re S.U.*, 12th Dist. Clermont No. CA2014-07-047, 2014-Ohio-5166, ¶ 35. Instead, the court must look to whether Mother "substantially remedied the concerns that caused the removal from the parent's custody." *In re V.R.R.*, 12th Dist. Butler No. CA2022-08-079, 2023-Ohio-185, ¶ 35.

{¶ 18} Here, despite the progress made, Mother failed to adequately remedy the mental health concerns that initially led to the removal of the children from her custody. As documented throughout this case, Mother is still susceptible to emotional outbursts, and her actions, particularly regarding mental health medications and marijuana use, are contrary to the recommendation of health providers. The trial court's concerns about Mother's mental health, and thus her ability to effectively parent the children, were supported by the record.

{¶ 19} In conclusion, the trial court's decision to grant custody of the children to Grandmother was not an abuse of discretion. Accordingly, Mother's sole assignment of error is overruled.

{¶ 20} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.