[Cite as *In re O.S.*, 2025-Ohio-5182.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN RE:                      :

    O.S., et al.               :

                         :

                         :

                         :

                         :

CASE NOS. CA2025-05-055
          CA2025-05-056

<u>OPINION AND</u>
<u>JUDGMENT ENTRY</u>
11/17/2025

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2022-0005

Mark W. Raines, for appellant.

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee, Butler County Children Services.

Andrew J. Brenner, for appellee, mother.

Nicole M. Stephenson, guardian ad litem.

# O P I N I O N

**SIEBERT, J.**

{¶ 1} Father appeals the order of the Butler County Court of Common Pleas, Juvenile Division, granting temporary legal custody of his children Jane (15 years old)

and John (12 years old)[1] to the Butler County Department of Children Services (the "Agency"). Father raises three assignments of error on appeal, arguing that the magistrate and juvenile court: (1) abused their discretion by refusing to continue the final disposition hearing to give Father's newly appointed counsel time to prepare; (2) did not properly weigh and apply the law and facts of the case; and (3) erred in only granting supervised visitation "as arranged with the custodian."

{¶ 2} We overrule each assignment of error. The decision to deny Father's second motion for a continuance was reasonable after considering, among other factors, that the case was over three years old by the time the final disposition hearing occurred and had already been continued once. The magistrate and juvenile court also did not err in granting legal custody to nonrelatives because the record demonstrated the children successfully assimilated to the placement and that Father, despite repeated efforts, continued to exhibit mental health and alcohol abuse issues that led to the children being removed from his care. Finally, we conclude that under the circumstances, Father received reasonable parenting time with the ability to work with the children's legal custodian to receive more. Ohio law does not set any specific threshold for "reasonable" parenting time.

## Background

{¶ 3} Father does not contest the underlying facts of this case on appeal. The Agency filed a complaint in January of 2022 alleging the children were legally dependent.[2]

---

1. "John" and "Jane" are a pseudonyms adopted for this opinion for the purposes of privacy and readability. *In re D.P.*, 2022-Ohio-4553, ¶ 1, fn. 1 (12th Dist.).

2. "Dependent" means, for purposes of this case, a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming guardianship" and a child who "is residing in a household in which a parent . . . committed an act that was the basis for adjudication that a sibling of the child or any other child who resides in the household is . . . [a] dependent child." R.C. 2151.04(C), (D)(1).

Both Father and Mother later stipulated to the children's dependent status, and the children were placed in the temporary custody of the Agency. During the proceedings, the children were placed with several nonrelative families. At one point, Father briefly regained temporary custody of the children. However, the Agency removed the children from Father's custody again in May of 2024 after police completed a welfare check and believed the children could not remain in the home because Father was intoxicated (although police did not smell alcohol). The children's paternal grandmother was unable to take the children despite having done so previously. The grandmother expressed concerns for her own safety with respect to Father. The children were then placed in the custody of nonrelatives, the "Jones" family.[3]

{¶ 4}  On October 29, 2024, the magistrate set a final disposition hearing for February 5, 2025. On the date of the hearing, Father asked for and received a continuance, and the magistrate rescheduled the hearing for March 7, 2025. The same day, Father's counsel withdrew from the case, and Father acknowledged on the record that he had not been in contact with his attorney for months.

{¶ 5}  On the day of the rescheduled final hearing, Father asked for another continuance so his recently appointed counsel could have additional time to prepare. The magistrate denied the continuance. After the hearing, the magistrate ordered that both children remain in the legal custody of the Joneses. Neither Father nor Mother testified at the hearing. The record contains no information concerning their work schedules or general availability, so the magistrate ordered parenting time should be supervised and arranged with the Joneses. The magistrate also ordered that Mother, Father, and the Joneses later "liberalize parenting time if that appears to be in the child's best interest."

---

3. The "Jones" family is another pseudonym adopted for the purpose of privacy and readability.

{¶ 6} In awarding legal custody of the children to the Joneses, the magistrate noted that Father has history of alcohol and mental health issues. The Agency had previously received and responded to reports in 2019 that Father's drinking resulted in physical violence to Mother. Jane reportedly witnessed that violence. Father has numerous criminal charges for disorderly conduct, harassment, and menacing. While Father participated and succeeded in case plan programs to address his substance abuse, Father also demonstrated a repeated, cyclical pattern of relapse. Father at one point made suicidal remarks during treatment and was placed in a 72-hour hold. Throughout the proceedings the Agency and various witnesses expressed continued concerns regarding Father's alcohol use, mental health, and household stability.

{¶ 7} Unsurprisingly, Father's relationship with the children struggled at times due to his alcohol abuse. Jane has a "strained relationship" with Father. His mental health and substance issues—and need to dedicate time to the resulting criminal proceedings and case plan services to address those issues—forced Jane to often take care of John. Father also previously stated in front of John that John is not Father's biological child, and when back in his temporary custody, Father stopped giving John prescribed, mental health medicine. Both children had previously been hospitalized with suicidal ideation and were receiving mental health services during these proceedings.

{¶ 8} Since being with the Joneses, neither child has been admitted to the hospital.[4] In addition, despite experiencing multiple school transfers during the proceedings, both children were doing well in school, had friends, and participated in extracurricular activities. Both children appeared happy and well adjusted.

---

4. The magistrate noted in its decision that "[s]hortly after [John] was placed with the Joneses, he was transported to the hospital and assessed but not admitted."

{¶ 9}  The Joneses indicated they were willing to facilitate parenting time orders (including being flexible with Father's work schedule) and invited the parents to birthday celebrations for the children. The children have a positive relationship with the Joneses. Mother and Father reside in Ohio, and the Joneses live in Indiana.

**First Assignment of Error – Denial of a Continuance**

{¶ 10}  Father contends that the magistrate abused its discretion in denying Father a continuance so that Father's newly appointed counsel could prepare for the final disposition hearing.

{¶ 11}  It is axiomatic that trial courts possess great discretion in deciding whether to grant or deny a continuance. *Ostigny v. Brubaker*, 2024-Ohio-384, ¶ 20 (12th Dist.). The trial court abuses its discretion if its "decision was unreasonable, arbitrary, or unconscionable." *Id.* "When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." *State v. Spradlin*, 2025-Ohio-135, ¶ 11 (12th Dist.); *see also Tinch v. Seward*, 2022-Ohio-3276, ¶ 10 (12th Dist.)

{¶ 12}  In making its decision, the trial court balances the needs of its docket, "the public's interest in a prompt and efficient judicial system" and the litigants' rights. *Tinch*, at ¶ 11. More specifically, the trial court may consider factors including, but not limited to, (1) the length of the requested delay; (2) whether there have been prior continuances; (3) any inconvenience to the litigants, witnesses, counsel, and the court; (4) whether the request is "legitimate" in nature as opposed to "dilatory, purposeful, or contrived"; and (5) whether the movant's own actions gave rise to the need for a continuance. *Id.* at 11.

{¶ 13}  Here, three years had passed between the Agency filing the initial dependency complaints and the final hearing. This greatly increased the need to reach finality in the proceedings and weighed against granting a continuance. Moreover, the

magistrate previously granted one continuance, and Father admitted on the record that he had not been in contact with his attorney in the months leading up to his original hearing date. As a result, the magistrate had little reason to believe that Father wanted a continuance so that he could work with his new attorney to prepare for the hearing. In light of these considerations, we conclude the magistrate did not abuse its discretion in denying a continuance.

{¶ 14} This assignment of error is overruled.

**Second Assignment of Error – Granting the Joneses Legal Custody**

{¶ 15} Next, Father argues the magistrate failed to "completely and thoroughly analyze" the children's best interests in this case. We disagree.

{¶ 16} In dependency proceedings, the juvenile court can award legal custody to a nonparent if it is in the child's "best interests." R.C. 2151.353(A)(3); R.C. 3109.04(F). Unlike permanent custody hearings, which terminate the parent/child relationship, legal custody proceedings solely give the custodian the ability to make day-to-day decisions for the physical care of the at issue child. *In re K.B.*, 2013-Ohio-858, ¶ 10 (12th Dist.). To determine if granting legal custody to another is in a child's best interests, the juvenile court looks to a variety of factors, including but not limited to:

> (1) the wishes of the parents; (2) the wishes of the children; (3) the children's interaction and relationships with those who may significantly affect their best interest; (4) the children's adjustment to any new home, school, and community; (4) the mental and physical health of all persons involved; (5) the mental and physical health of all involved; and (6) who is more likely to honor and facilitate court-approved parenting time rights.

*See* R.C. 3109.04(F). We review a juvenile court's award of legal custody for an abuse of discretion and will not disturb it if the decision was based on competent and credible evidence. *In re W.P.*, 2023-Ohio-4083, ¶ 15-16 (12th Dist.).

- 6 -

{¶ 17} We conclude the magistrate and juvenile court did not abuse their discretion in awarding custody of the children to the Joneses. Based on the evidence and testimony presented, the magistrate made many findings that considered various relevant factors, including those identified by statute: (1) Father's desire for custody; (2) Mother's and the guardian ad litem's desire for custody to stay with the Joneses; (3) the children's strained relationships with their Father due to his history of alcohol abuse; (4) the children's success and assimilation into the Joneses' home; (5) the children's educational and social success with the Joneses; and (6) the Joneses' willingness to work with Mother and Father for visitation. We therefore conclude the juvenile court based its decision on competent and credible evidence.

{¶ 18} Father's arguments on appeal do not contest that his turbulent history of alcohol abuse has at times put members of his family—including the children and his own mother—in fear of him and served as a catalyst for these proceedings. However, Father argues the magistrate "did not put enough weight on his consistent desire to maintain his sobriety demonstrated throughout this case, his significant treatment accomplishments since the early 2024 relapse, and the lack of positive screens throughout the life of this case." The magistrate acknowledged Father's repeated efforts to maintain sobriety, but this is only one factor the magistrate had to consider. Unfortunately, Father's "consistent desire" and efforts did not translate into reliable results. Because "[a] child's life is not an experiment that can be left to chance" we agree with the magistrate and the juvenile court that despite these efforts, the best interest of Jane and John is to remain in the legal custody of the Joneses. *In re G.W.*, 2019-Ohio-1586, ¶ 52 (12th Dist.). Father's arguments on appeal essentially ask this court to substitute his or this court's judgment for that of the magistrate and juvenile court. We must refuse this invitation.

{¶ 19} This assignment of error is also overruled.

**Third Assignment of Error – The Visitation Schedule**

{¶ 20} Finally, Father argues the magistrate and juvenile court erred in giving him only two hours of weekly visitation time and giving the Joneses "discretion to liberalize parenting time" if it is in Jane and John's best interest. He again asserts the magistrate and juvenile court did not acknowledge his alcohol abuse progress and "ability to safely have contact" with Jane and John.

{¶ 21} We again find no error in the magistrate and juvenile court's decision. Ohio law requires only that a parent be granted "reasonable visitation," and a visitation schedule does not have to be specific to be reasonable. *In re A.M.W.*, 2022-Ohio-2913, ¶ 33 (12th Dist.), citing R.C. 2151.011(B)(50); *In re C.A.*, 2015-Ohio-1410, ¶ 29 (12th Dist.). Father did not testify at the final hearing or make any specific requests regarding parenting time, and the court's order gives the Joneses the discretion to give Father additional parenting time in the future. We see no reason to conclude this is not a reasonable visitation outcome for Father.

{¶ 22} This final assignment of error is overruled.

{¶ 23} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Melena S. Siebert, Judge